[No. 7,413.—Department Two.]
December 22, 1882.

## SAMUEL H. HARMON v. LUCY B. PAGE ET AL.

LIABILITY IN EQUITY OF STOCKHOLDER TO CREDITOR OF AN INSOLVENT COMMERCIAL CORPORATION.—A Court of equity will, for the benefit of a creditor of an insolvent commercial corporation, compel a stockholder in such corporation to pay in the amount of capital stock which he has contracted with the corporation to take.

CONSTITUTION OF 1879 AS TO LIABILITY OF STOCKHOLDERS.—Neither Section 2 nor Section 3 of Article xii. of the Constitution of 1879, relating to the liability of stockholders in corporations, has any application to this case, because the liability of the stockholders accrued prior to the adoption of that Constitution.

ID.—CONSTITUTION OF 1863.—But Sections 32 and 36 of Article iv. of the Constitution of 1863 are substantially the same as Sections 2 and 3 of Article xii. of the Constitution of 1879.

CONCURRENT REMEDIES OF CREDITOR OF SUCH CORPORATION.—None of the provisions of either Sections 32 or 36 of Article iv. of the Constitution of 1863, or of Section 322 of the Civil Code of this State, ousts a Court of equity of its jurisdiction to compel the stockholders of such corporations, under those circumstances, to pay in, for the benefit of creditors, the amount of the capital stock so contracted for by them. The two remedies of the creditor are concurrent—in the one case it is constitutional or statutory, in the other equitable.

STATUTE OF LIMITATIONS—PLEADINGS—DEMURRER.—The defendants demurred to the complaint in this action, and contended that the cause of action is barred by the Statute of Limitations. The complaint was filed August 30, 1878; in the complaint it was alleged that the plaintiff, on the second day of May, 1878, recovered a judgment against the insolvent corporation, upon an indebtedness which accrued between the ninth of May and the fifteenth of October, 1873. No disbandment of the company, no cessor of business, no call upon the subscribers to pay, nor the existence of any other fact that would put the Statute of Limitations in motion, was averred in the complaint.

*Held:* A defendant can not avail himself of the Statute of Limitations by demurrer to the complaint, unless it affirmatively appears therefrom that the action is barred by some provision of that statute; in this case it does not so appear, and the demurrer should be overruled.

APPEAL by the plaintiff from the judgment of the District Court of the Fourth Judicial District of the State of California in and for the City and County of San Francisco. MORRISON, J.

Action in equity to compel the defendants, as stockholders in insolvent commercial corporation, to pay in for benefit of plaintiff amount of stock contracted for by them. The facts are stated in the opinion of the Court.

*Roche & Desbeck* and *J. W. Carter,* for Appellant.

In equity the unpaid subscription of a stockholder is regarded as a trust fund, pledged for the payment of the debts of the corporation. Such unpaid shares or balances are assets of the corporation, and are as much a part of the capital stock as the sums that have been realized thereon. They often constitute the only resource of the company. It has been long a principle of equity that where there is a claim which may be directly enforced at law against one party, but to the due discharge of which another party is ultimately liable, a court of equity treats it as a trust by the party ultimately liable, which may be directly enforced in favor of the party ultimately entitled to the benefit of it. (2 Story's Eq. Jur., §§ 1250–1252.) In this case we have a judgment against the corporation. It has a right to enforce payment of its subscriptions, and with them pay our judgment. This doctrine has always been applied to the unpaid subscription of a corporation in favor of creditors, and is found in the text-books. (Angell & Ames on Corp., §§ 602 *et seq.,* and authorities cited.) The following authorities affirm and apply the principle to cases such as the one at bar: *Adler* v. *Milwaukee Pat. Brick Co.,* 13 Wis. 57; *Bartlett* v. *Drew,* 57 N. Y. 587; *Ward* v. *Griswoldville Mfg. Co.,* 16 Conn. 593; *Curran* v. *State of Arkansas,* 15 How. 307; *Nathan* v. *Mohawk Ins. Co.,* 3 Edw. Ch. 228; *Mann* v. *Currie,* 2 Barb. 294; *Wallworth* v. *Holt,* 4 Myl. & Cr. 619; *Allen* v. *Montgomery*

*R. R. Co.*, 11 Ala. (N. S.) 437; 1 Am. Law Mag. 96; *Mann* v. *Cooke*, 20 Conn. 177; *Sanger* v. *Upton*, 91 U. S. 60; *Hatch* v. *Dana*, 101 id. 210.)

The statutory remedy by selling delinquent shares for assessments does not affect the right of action of the corporation on the subscription. In the case of *Instone* v. *The Frankfort Bridge Co.*, 2 Bibb. 576, in discussing this question, the Court says: "A corporation is an artificial person, which, when formed and named acquires many powers, capacities, and incapacities. Some of them, as Blackstone observes, are necessary and inseparably incident to every corporation, and are tacitly annexed, of course, as soon as the corporation is duly created. Such is the right or capacity to sue or be sued, implead or be impleaded, grant or receive, and do all other acts as a natural person may. (1 Bl. Com. 502.) It follows, therefore, that the right to sue would attach to the company as soon as it was organized upon principles of the common law, independent of any provision in the Act creating the company. Nor can we perceive that it can make any difference with respect to the right to sue, whether the debt or demand is due by subscription or accrues on any other account. The subscriber is as much bound to pay the amount of the shares subscribed by him as he would be to pay any other debt, and the right of the company to demand payment is incontestable. Where there is such an obligation on the one to pay, and a right in the other to demand payment, the failure to pay necessarily superinduces a remedy by suit. That the provision of the Act giving to the company the right to sell the shares of a delinquent subscriber does not amount to a negation of the right, seems equally clear. The provision is in the affirmative, and it is a maxim of law that an affirmative statute does not take away the common law. The remedy given by the Act is cumulative only, and the company had a right to resort either to that or the remedy which the common law gave. It was mentioned in the argument as a rule of law, that where a statute creates a right, and prescribes a mode in which it shall be enforced, the mode prescribed by statute and no other must be pursued. Whether such a rule exists or not, is not material to decide, for it is plain that it is wholly inapplicable to the case before the

Court. The right to the demand due from the defendant was not given to the company by the Act of incorporation. That Act, by creating the corporation, gave it capacity to acquire the right, but the right itself was acquired by the defendant's becoming a subscriber; its existence, therefore, depended upon his consent, and was not and could not have been created by the Act of incorporation." The following authorities sustain these views: 1 Redf. on Rail. 163, note 3; Ang. & Ames on Corp., § 549; *Rutland etc. R. R.* v. *Thrall,* 35 Vt. 536; *Hartford etc. R. R.* v. *Kennedy,* 12 Conn. 499; *Buffalo and N. Y. City R. R.* v. *Dudley,* 14 N. Y. 336; *Spangler* v. *Indiana etc. R. R.,* 21 Ill. 276; *N. H. R. R. Co.* v. *Johnson,* 30 N. H. 402; *Piscataqua Ferry Co.* v. *Jones,* 39 id. 491; *Herkimer M. and H. Co.* v. *Small,* 21 Wend. 273.

It follows that the statutory liability imposed upon stockholders for the debts of the company in no way interferes with the equitable remedy sought here to be enforced. "Unpaid stock is part of the assets of an insolvent corporation without the aid of any statute, and creditors may compel its collection by the trustees by proceedings in equity." (*Briggs* v. *Penniman,* 8 Cow. 387; S. C., 18 Am. Dec. 454.) In *Haskins* v. *Harding,* 2 Dill. 106, the Court say: "Without the aid of any statute the unpaid subscriptions to the capital stock constitute a fund available to creditors who are unable to make their demands from the corporate debtor, and equity will lend its aid to enforce payment for the benefit of creditors." The same rule is stated in almost the same words in *Winans* v. *McKean R. R. and Nav. Co.,* 6 Blatchf. 222. The same reasons that have been adduced to show that the statutory remedy for the collection of assessments or calls was not exclusive in the case of the corporation, apply with equal force to establish that the creditor is not confined exclusively to his statutory remedy, unless where the right attempted to be enforced is conferred by statute. (*Instone* v. *Frankfort Bridge Co., supra;* Sedgwick Stat. and Const. Law, 401; *Ward* v. *Severance,* 7 Cal. 126.) In Ohio it was held that an action for unpaid assessments on subscription for stock might be joined in an action on the statutory liability of stockholders. (*Warner* v. *Callender,* 20 Ohio St. 190.)

This action is not barred by the Statute of Limitations.

If the corporation can recover, the plaintiff can, because it is through the corporation that his equities are enforced. As long as the corporation is not barred by the statute, neither is the creditor. Our debts are in full force against the corporation. Plaintiff's judgment against it was recovered May 2, 1878, and the complaint in this action was filed August 30, 1878, the judgment being in full force. Our view of this case is fully sustained by the Supreme Court of Georgia, in the case of *Cherry* v. *Lamar*, 58 Ga. 541. In that case the same question as to the Statute of Limitations was raised as in the one at bar. The Supreme Court said: "When judgment creditors of a corporation who have exhausted their remedy against their debtor proceed by bill to subject debts equitably liable to the payment of their judgments, they are not barred if their judgments are not dormant and if the debts they seek to reach are not barred, as between the corporation and its debtors, in this case the stockholders who stand indebted on their subscriptions to the capital stock; * * * that an action on the bills would have been barred when the present cause was commenced is quite immaterial, the rights of the creditors, as against the bank, rest now, not upon the bills, but upon the judgments; and as against the subscribers to the stock, upon the contracts of subscription, by which the subscribers became bound to the bank. For the purposes of this proceeding, it is not necessary that the complainants should disclose the causes of action which they had against the bank, and on which their suits (commenced in December, 1869) were founded. It is enough that they produce the judgments which were rendered in those suits, and show that they are unsatisfied, and that satisfaction can not be obtained without resort to the fund now sought to be brought in." The discussion of the Statute of Limitations, therefore, limits itself to the question, whether the subscriptions are barred as between the corporation and the subscribers.

As appears from the complaint, the corporation, the City Paving Company, was organized and incorporated November 10, 1868, before the Codes were in effect. The law governing the incorporation will be found in the first volume of Hittell's General Laws, pp. 147 *et seq.* By Section 441 (Sec. 10), p. 148,

it is provided that "the trustees shall have power to call in and demand from the stockholders the sums by them subscribed, at such times and in such payments or installments as they may deem proper." The statute of New York on this subject provided that the directors might require the subscribers to pay the amounts subscribed in such manner and in such installments as they might deem proper. Charles Bouton sued the Dry Dock etc. Stage Company, a corporation organized under that statute, for goods sold. The Marine Court allowed the defendants to set off the par value of four shares of their capital stock, as money due them upon the plaintiff's subscription for such four shares. The judgment was reversed in the common pleas, on the ground that the statute clearly contemplated a resolution by the directors, fixing the manner and the installments required; that the plaintiff's subscription was subject to this provision, and he did not agree to pay, nor was he bound to pay, until so required; and it was held that the set-off ought not to have been allowed at all, without evidence that the subscription had become payable, under a proper call by the directors for payment. (*Bouton* v. *Dry Dock Co.*, 4 E. D. Smith, 420.)

It was held in *The Western R. R. Co.* v. *Avery*, 64 N. C. 491, that the Statute of Limitations against a subscriber commenced to run only from the call. In *Allibone* v. *Hager*, 46 Pa. St. 48, no call had been made for eleven years, and it was claimed that the Statute of Limitations would be a bar. The Court held that this by no means followed, that the delinquent stockholders might all the time have controlled the corporation, and yearly received profits, and it would be strange if they could, by a failure to call subscriptions from themselves, raise a bar in favor of themselves against the creditors of the corporation. See also Redfield on Railways, 163, where the author says: "A subscription for shares is justly regarded as equivalent to a promise to pay calls as they shall be legally made to the amount of the shares." Also same authority, p. 180, same volume. And to the same effect, *Mansfield etc. R. R. Co.* v. *Hall*, 26 Ohio St. 310. A party subscribing for stock of a corporation is not liable except for amounts of assessments duly levied. (*California Sugar Co.* v. *Schaefer*, 57 Cal. 398.) Even if the recovery of the subscription was

barred by limitation against the corporation, it would not be so against the plaintiff. (*Eyre* v. *Beebe,* 28 How. Pr. 335.) The corporation by its release to the subscriber could not relieve him from his liability to pay his subscription when called upon by a creditor. (*Upton* v. *Trebilcock,* 91 U. S. 45.) Neither can it do so indirectly by its laches. Whether the creditors of a mining corporation whose stockholders have entered into no conventional obligation to pay subscriptions would be liable to such an action as this, is a question not involved here. Judge Hoffman, of the District Court of the United States, has held not. (*In re The South Mountain Cons. M. Co.,* 7 P. C. L. J. 748.)

*McAllister & Bergin,* for Respondents.

In support of the judgment we beg to submit the following points:

As a suit based upon the statutory liability of a stockholder, the action is clearly barred by the Statute of Limitations. (*Stilphen* v. *Ware,* 45 Cal. 111; *Davidson* v. *Rankin,* 34 id. 505; *Parrott* v. *Colby,* 6 Hun, N. Y., 56.) The original indebtedness accrued between May 8 and October 15, 1873. In actions upon stockholders' statutory liability, the doctrine of contribution does not obtain. (*United States* v. *Knox,* 102 U. S. 426.) The complaint is fatally defective as one based upon the individual liability of the stockholder.

The individual liability of a stockholder is direct and concurrent with that of the corporation of which he is a stockholder. A complaint, based upon such liability, must, therefore, aver all the facts, and with the like precision, averment of which would be necessary to establish legal liability against the corporation itself. (*Larrabee* v. *Baldwin,* 35 Cal. 168; *Young* v. *Rosenbaum,* 39 id. 646; *Neilson* v. *Crawford,* 52 id. 248.) The Court will observe that the complaint in this respect is radically insufficient. The averment that "the indebtedness upon which said judgment was recovered, and upon which the same is founded, was incurred by the City Pavement Company between the ninth of May, 1873, and the fifteenth of October, 1873, and that the said City Pavement Company was then, and ever since has been, and still is, wholly insolvent," utterly fails to allege any issuable fact. It

is simply an averment of a bald legal conclusion. Who were, then, the stockholders? what were the number of their respective shares of stock? what were the debts and liabilities of the company?—in fact, all and every of the elements necessary to support such an action are entirely wanting in this complaint. Nor is the action any the more tenable upon the ground of liability for unpaid subscription to capital stock. Such liability is several, separate, and distinct. There is, of course, no such thing as contribution between the respective subscribers to the capital stock of a corporation upon their respective subscriptions. The liability of each is separate and several, and not joint. Hence, there is clearly a misjoinder of parties defendant, as well as an utter absence of right to recover on the part of the plaintiff.

As observed by this Court in *The California Sugar Manufacturing Co.* v. *Schaefer*, 57 Cal. 398: "If the subscription paper was signed after the corporation was formed, and even if the subscription can be considered as the equivalent of a subscription for stock, plaintiff has no power to treat the subscribers differently from other stockholders, or to recover from them other than the amounts of assessment duly levied." The complaint in this case wholly fails to allege demand for levy of any assessment, and wholly fails to show any right in plaintiff to arrogate to himself assertion of rights which legally can only be asserted by the corporation. The liability of any of respondents for unpaid subscription is primarily and directly to the corporation. The corporation alone has the legal right to assert such liability. Creditors have neither the right nor the title to do so. Nor does the insolvency of the corporation in the least affect this rule.

Under the statute the Board of Directors are clothed with the powers of the corporation, and are alone entitled to assert its rights. (*Gashwiler* v. *Willis*, 33 Cal. 19; *Gorham* v. *Gilson*, 28 id. 484; *Smith* v. *Hurd*, 12 Metc. 385; *Allen* v. *Curtis*, 26 Conn. 456; *Greaves* v. *Gouge*, 16 Abb., N. S., 378; S. C., 69 N. Y. 154; *Abbott* v. *Merriam*, 8 Cush. 590.) Courts of equity do not undertake to administer the affairs of corporations in absence of some equitable ground, upon which exercise of its jurisdiction may be invoked. (*Oglesby* v. *Attrill*, 4 Morrison's Trans. 926.) They never interpose in

absence of some such equitable ground. (*Hawes* v. *Oakland*, 104 U. S. 450.) Neither creditors nor stockholders can ignore a corporation or its board of directors, and undertake to arrogate to themselves assertion of the rights of the corporation in absence of just cause therefor. (*Glenny* v. *Langdon*, 98 U. S. 29; *Bate* v. *Graham*, 1 Kern. 239.)

The complaint in this case utterly fails to show any equitable ground upon which a court of equity would interpose between the corporation and the stockholders. There is no pretense of any fraud, collusion, or improper conduct on the part of the board of directors of the corporation. As long as the corporation continues to exist, the board of directors are the legally appointed persons charged with the duty to assert the rights of the corporation, alike for the benefit of its stockholders as well as its creditors. This is, under the law, their right and their duty, and until it is made to appear that they have proved recreant to their trust, a court of equity has no jurisdiction to wrest from them exercise of their appropriate functions, or itself to undertake to perform duties specially enjoined upon them by law. As already observed in the aspect in which we now speak of the complaint, it is manifestly open to the various objections to it taken in the demurrer, viz.: Misjoinder of parties plaintiff, misjoinder of parties defendant, and misjoinder of causes of action. We do not, however, deem it necessary to discuss, nor do we propose to concede the proposition with respect to liability of stockholders for unpaid subscription for stock. Upon that subject we beg to call the attention of the Court to the case of the *South Mountain Consolidated Mining Co.*, 7 P. C. L. J. 748.)

Liability to suit upon such subscriptions is barred by the Statute of Limitations. The averment is "that the indebtedness upon which the judgment was recovered, and upon which the same is founded, was incurred by the City Pavement Company, between the ninth of May, 1873, and the fifteenth day of October, 1873, and that the said City Pavement Company was then, and ever since has been, and still is, wholly insolvent," from which it is evident that this corporation, as early as May, 1873, ceased to be a going institution, and its creditors were put upon diligence to assert their

rights. Even as against liability upon subscriptions, the statute was then set in motion. If they can now sue, they could then sue, and having neglected to sue, they are barred. If they could not then sue, neither can they now sue. (*Gerry* v. *Woodward*, 53 Ala. 376; *McCully* v. *Pittsburg R. R. Co.*, 32 Pa. St. 25; 36 id. 77.) Moreover, a single creditor can not maintain such an action.

MORRISON, C. J.:

The complaint shows that the defendant, the " City Paving Company," is a corporation duly organized and formed under the laws of the State of California, on or about the tenth day of November, 1868, with a nominal capital stock of $500,000, divided into 5,000 shares of $100 each. It also avers that the defendants, respectively, at the times mentioned in the complaint, became the subscribers to shares of the capital stock of the corporation, setting forth the number of shares subscribed for by each of them. It further alleges that none of the defendants have ever paid into the corporation any portion of the capital stock subscribed for by them, and charges that the whole amount that each defendant subscribed remains due and unpaid. The complaint further charges that on the second day of May, 1878, the plaintiff recovered a judgment against the City Paving Company in the District Court of the Fourth Judicial District, for the sum of $10,500, which judgment still remains in full force and effect, and wholly unsatisfied. That an execution was issued on such judgment against the property of the City Paving Company, which was placed in the hands of the Sheriff of the City and County of San Francisco, and has been returned wholly unsatisfied. That the indebtedness upon which the aforesaid judgment was recovered accrued between the ninth day of May, 1873, and the fifteenth day of October of that year. There is a further averment in the complaint of the total insolvency of the City Paving Company, and that all of the subscriptions of the defendants to the capital stock of the corporation were made prior to the creation of the indebtedness to the plaintiff. To the complaint the defendants demurred, the demurrer was sustained by the District Court, and plaintiff has taken this appeal.

The questions involved in the case are somewhat new in this State, and have never before (within our knowledge) been presented to the Supreme Court for decision.   An examination of the authorities shows, however, that a suit in equity by creditors of a corporation, to compel the subscribers to the capital stock to pay in their subscriptions, is a very common proceeding not only in England but also in this country.   In Ang. & Ames on Corporations, § 602, we find the law thus stated : "It has been held that when the trustees, or other proper agents for that purpose, neglect to call in the debts due by the stockholders of a corporation for stock, so as to enable the company to pay its debts, a creditor, by a bill in chancery, can compel such agents to enforce contribution from the stockholders according to their subscriptions."   In the case of *Henry* v. *The Vermillion Railroad Co. and other stockholders,* 17 Ohio, 189, the Court say: "These bill are filed under the act directing the mode of proceeding in chancery.   They set forth judgments at law recovered against the Company; further, that after efforts made, they could not be collected on execution, and that the individual defendants are indebted to the Company as stockholders, upon their stock subscriptions. The principle has already been recognized by this Court, that a creditor's bill will lie against a stockholder of an incorporated company, to compel him to pay over to a judgment creditor the amount of his subscription, which had not before been paid to the company (*Miers et al.* v. *Zanesville etc. Turnpike Co.,* 11 Ohio, 273; S. C., 13 id. 197), and the authority of these cases we find no reason to deny."

In the case of *Haskins* v. *Harding,* 2 Dill. C. C. 106, Dillon, Circuit Judge, uses the following language: "Without the aid of any statute, the unpaid subscriptions to the capital stock constitute a fund available to creditors who are unable to make their demands from the corporate debtor, and equity will lend its aid to enforce payment for the benefit of creditors."   (Citing numerous authorities.)   In the case of *Ogilvie et al.* v. *The Knox Insurance Co.,* 22 How. 380, the Supreme Court of the United States maintained the same principle in a case where the subscriptions were obtained by fraud.   It is there said that, "in a bill by a judgment creditor against an incorporated insurance com-

pany and its stockholders, to compel the latter to pay up the balance due on their several subscriptions to the stock, they can not be allowed to defend themselves by an allegation that their subscriptions were obtained by fraud and misrepresentations of the agent of the company. It is too late, after the investment is found unprofitable and debts are incurred, for stockholders to withdraw their subscriptions under such a pretense or plea."

The case of *Adler et al.* v. *The Milwaukee Patent Brick Manufacturing Company et al.*, 13 Wis. 57, is a strong case to the same effect. The language of the Court is that "the stockholders, being in general free from personal responsibility, the capital stock constitutes the sole fund to which creditors look for the liquidation of their demands. It is the basis of the credit which is extended to the corporation by the public, and a substitute for the individual liability which exists in other cases. So far as the creditors are concerned, it is regarded in the law as a trust fund, pledged for the payment of the debts of the corporation. * * * If, therefore, by the willful or stubborn inaction of the directors or stockholders the company fails to meet its obligations and perform its duties, a court of equity will, on a proper application, afford the requisite relief."

In a very recent case—*South Mountain Con. Mining Co.*, 7 Sawy. 30—Hoffman, J., says: "I do not question the power of the Court to compel contribution of unpaid subscriptions to the capital stock of an insolvent corporation for the purpose of paying its debts." The learned Judge cites numerous decisions of the Supreme Court of the United States in support of his view of the law.

It may be remarked that the case of the *South Mountain Consolidated Mining Company*, 7 Sawy. 30, was carried by writ of review to the Circuit Court, was there affirmed, and the opinion rendered by the learned Circuit Judge is relied upon by the defense in this case. But with due deference to the very able counsel, we must say that we do not think that it sustains defendants' position. Mr. Justice Sawyer there says: "Mining corporations in California are, in these particulars, *sui generis*. They are organized and carried on upon principles, in these respects, wholly different

from banking, railroad, insurance, and other like commercial corporations having a *subscribed* capital stock. There is no agreement, express or implied, to pay up any particular amount of stock, and no one understands that there is. Certainly none is intended by the parties. If there is a contract to pay up the full nominal amount of the stock, it could be called in from time to time without regard to the liabilities or needs of the corporation. There being no such agreement, there is no contract or agreement to pay up capital stock, which can constitute assets of the corporation. There is a mere power of assessment under the statute and by-laws— not a contract to pay in installments upon call; but this mere power to assess, independent of any contract, express or implied, to pay up the nominal amount of capital stock in installments, is not assets of the corporation."

The distinction between the case there considered, which involved the liability of a stockholder in a *mining corporation*, and the liability of a *subscriber to the capital stock* of a banking, railroad, insurance, or other commercial corporation, such as we are dealing with in this case, is clearly marked out in the opinion of Mr. Justice Hoffman. He says: "These principles apply to all cases where an obligation has been created or incurred on the part of a stockholder to pay to the corporation a certain sum, being the par value of the capital stock subscribed for or transferred to him. The liability thus created grows out of contract, express or implied, and the creditors of the corporation may avail themselves of it, as of any other *chose in action* or equitable assets of the corporation, on well-settled and familiar principles."

Other authorities might be cited in support of the views above presented, but we think we have sufficiently shown that when a stockholder has *contracted* with the corporation to pay in a certain amount of the capital stock, he is bound by such contract, and a court of equity will enforce it for the benefit of creditors of the insolvent corporation.

But it is claimed that the rule above stated has been changed in this State. In the first place, our attention has been called to Section 2, Article xii. of the new Constitution, which provides that "dues from corporations shall be secured by such individual liability of the corporators and other

means as may be prescribed by law;" and also to Section 3 of the same article, which declares that "each stockholder of a corporation, or joint-stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock, or shares of the corporation or association." But the above provisions of the new Constitution do not apply to this case, as the liability of the stockholders accrued before the new Constitution was adopted. The provisions of the old Constitution on this subject, however, were substantially the same. By Section 32, Article iv. (Const. of 1863), it is provided: "Dues from corporations shall be secured by such individual liability of the corporators, and other means, as may be prescribed by law." And Section 36 of the same article reads as follows: "Each stockholder of a corporation, or joint-stock association, shall be individually and personally liable for his proportion of all its debts and liabilities."

We are also referred to Section 322 of the Civil Code, respecting the liability of stockholders. But is the right of the creditors of the corporation to pursue the subscribers in equity, as has been attempted in this case, taken away by the provisions of the Constitution or the Act of the Legislature? We think not; and will endeavor to show that it is not, by reference to the authorities.

Thompson, in his recent work on the Liability of Stockholders, says (§ 266): "The general rule is, that, although a creditor has a concurrent remedy against a shareholder at law, this does not oust the jurisdiction of the courts of equity." "Section 266. The rule obtaining in some of the States, in case of a statutory liability, is that the creditor has a concurrent remedy at law." "It has been held, under a statute of individual liability, that where a suit in equity has been instituted for such a purpose (the benefit of all the creditors), no creditor can institute a separate suit for the enforcement of such liability in his own behalf." (§ 275.)

The case of *The Bank of the United States* v. *Dallam et al.*, 4 Dana, 575, is an authority on this subject. That was a suit in chancery against the shareholders in a corporation called

the Fayette Paper Manufacturing Company, the charter of which contained the following clause: "Provided, however, that the estate and property of every individual shareholder, who holds or possesses stock in said corporation, shall at all times be liable and subject in law, in proportion to his or her interest therein, to pay and satisfy all debts and demands contracted by said corporation during the time he or they held stock therein, upon a failure of the corporate funds to discharge the same." The plaintiff had recovered a judgment against the corporation, and failing to collect the money from it, prosecuted his suit on the equity side of the Court against the shareholders, and the Court there says: "As the judgment and return on the execution thereon entitled the bank to demand the amount of its debt from stockholders in their personal right, and as they are liable, not *in solido*, but only distributively, in the ratio of their several interests, and are moreover multitudinous, we have no doubt that the Circuit Court, *sitting in equity*, had jurisdiction over a joint bill filed against all of them, concurrently with a court of law, over separate actions against each of them, upon his sole and several liability."

The case of *Matthews et al.* v. *Murray et al.*, 24 Md. 527, was a suit in equity against the stockholders in a company incorporated under an Act containing the following provision: "The stockholders shall be severally and individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company," and the bill was entertained by the Court. In the later case of *Norris* v. *Johnson*, 34 id. 489, the Court uses the following language: "In such case (against the stockholders) it is unanimously conceded the creditors may have relief in equity, but the controverted question is, Have they not also the right to sue at law?" In Massachusetts it has been held, that the creditor *must* pursue his remedy against the shareholders in a court of equity. In the case of *Harris* v. *The First Parish in Dorchester*, 23 Pick. 112, the Court holds that "an action at common law does not lie in favor of a bank, against a stockholder, to enforce the provision in Revised Statutes, c. 26, sec. 30, that if any loss or deficiency

of the capital stock in any bank shall arise from the official mismanagement of the directors, the stockholders shall, in their individual capacities, be liable to pay the same; but the remedy is by bill in equity." The case of *Perry et al.* v. *Turner et al.,* 55 Mo. 418, is an authority sustaining the jurisdiction of a court of equity in a proceeding against the stockholders; and the cases of *Pollard* v. *Bailey,* 20 Wall. 520, and *Hatch* v. *Dana,* 101 U. S. 205, are authorities in support of the proposition we have been considering.

It appears to us to be well settled, that a suit such as was instituted by the plaintiff properly lies in a court of equity, unaffected by any remedy the creditor may have under the provisions of the Constitution and the statute. Indeed, it may be that the constitutional and statutory remedy is a broader one than that arising upon the contract of subscription, for in a suit upon the latter the recovery can not extend beyond the amount of the subscription, whereas the liability created by the law, independent of any contract, is for the stockholder's proportion of all the debts contracted or incurred during the time he was such stockholder.

There is but one other question in the case, and that relates to the Statute of Limitations. The indebtedness upon which the judgment was recovered accrued between the ninth of May and the fifteenth of October, 1873; the date of the judgment is May 2, 1878, and the complaint in this case was filed August 30, 1878; and it is claimed, on behalf of the defendants, that the Statute of Limitations has run in their favor. An examination of the authorities, however, will show that the point is not well taken. Referring again to Thompson on the Liability of Stockholders, we find the law thus stated: " Where the liability is for unpaid balances on stock subscriptions, there is authority for the position that the statute does not begin to run (if at all) before a notorious disbandment of the company and cessor of business; and there is good sense in this view. However this may be, it is clear of doubt that, in case of a company which continued to transact business, and which has been a 'going company,' without interruption, from the time of the subscription of the stockholder until the commencement of the suit for calls, the statute would not commence to run until a call made by the stockholder to pay

it ; and, for stronger reasons, it would not begin to run until that time, if the controversy were between a creditor of the corporation and a shareholder." (§ 291.) In the case of *Curry* v. *Woodward*, 53 Ala. 376, the Court say : "Until the call was made, or there was an evident disbandment of the company and a relinquishment of business, the Statute of Limitations would not begin to run." To the same effect is the case of *Cherry et al.* v. *Lamar et al.*, 58 Ga. 541, in which a bill was filed by the creditors of a corporation to subject to the payment of their judgment against it certain unpaid stock subscribed by the defendants.

A defendant can not avail himself of the Statute of Limitations, by demurrer to the complaint, unless it affirmatively appears therefrom that the action is barred by a provision of that statute; and in this case there is no averment of the existence of any fact that would put the statute in motion. No disbandment of the company, no cessor of business, no call upon the subscribers to pay, is averred in or appears from any fair construction of the complaint. We are of opinion that the complaint sets forth a good cause of action against the defendants, and the demurrer should have been overruled

Judgment reversed.

MYRICK and THORNTON, JJ., concurred.