## LODOWICK F. CROFOOT, AS RECEIVER OF THE OMAHA FIRE INSURANCE COMPANY, APPELLANT, *v.* G. W. THATCHER AND S. T. JOSSELYN, RESPONDENTS.

LEX FORI — LEX LOCI CONTRACTUS. DEMAND NOTE — UNDER AUTHORITY SEC. 3, CHAP. 43, C. L. NEBRASKA — WHEN CAUSE OF ACTION ARISES UNDER SUB. 4, ART. 11, CONST. NEB. INTENT OF PARTIES — USE OF WORDS "ON DEMAND" UNDER NEBRASKA STATUTE AND CONSTITUTION. CORPORATE PROPERTY — CONSTITUTES TRUST FUND — RIGHTS OF CREDITORS — STATUTE OF LIMITATIONS.

1. *Lex Fori — Lex Loci Contractus.*

    *Lex Fori* controls in respect to the time within which a cause of action must be enforced, but *lex loci contractus* controls the validity, interpretation, and effect of the contract sued upon.

2. *Demand Note — Under Authority Sec. 3, Chap. 43, C. L. Nebraska — When Cause of Action Arises under Sub. 4., Art. 11, Const. Neb.*

    When a demand note is given under the authority of Sec. 3, Chap. 43 Compiled Laws of Nebraska, for the unpaid portion of the subscription price of stock in an insurance company organized under the laws of Nebraska, under Subdivision 4 of Article 11 of the Constitution of that State, no cause of action arose on the note until the insolvency of the corporation and until actual demand made for the amount of the note.

3. *Intent of Parties — Use of Words "on Demand" under Nebraska Statute and Constitution.*

    Under the statute and constitution of Nebraska the parties must have intended the words "on demand," expressed in the note, to mean an actual call or demand for payment, and not merely to be governed by the law controlling ordinary negotiable instruments.

4. *Corporate Property — Constitutes Trust Fund — Rights of Creditors — Statute of Limitations.*

    The property of a corporation including unpaid stock subscriptions, such as evidenced by the note in question, con-

stitutes a trust fund for the payment of debts due creditors, and creates a right against which the statute of limitations does not begin to run until the *cestui que* trust has notice of the repudiation of the trust.

(Decided April 3, 1899.)

Appeal from the First District Court, Cache County, Hon C. H. Hart, *Judge.*

Action by plaintiff as the duly appointed receiver of the Omaha Fire Insurance Company, against defendants on a promissory note, payable on demand, alleged to have been made under and by virtue of Sec. 3, Chap. 43, Compiled Laws of Nebraska, as set forth in the complaint.

Defendants interposed and demurred under the provisions of Subdivision 2 of Sec. 2875, Rev. Stat. 1898, and also Sec. 314, C. L. U. 1888 and Sec. 3143 C. L. U. 1888. The demurrer was sustained, and plaintiff, electing to stand upon his complaint, a judgment was entered, dismissing the action with costs.

From that judgment plaintiff appealed.     *Reversed.*

*J. E. Frick, Esq.*, for appellant.

It is conceded that the law of Utah controls in so far as the remedy is concerned; that the statute of limitations falls within the remedy, and thus these statutes control. This, however, applies only to an existing and enforcible cause of action. When the cause of action in fact arose, or whether there was a cause of action, or whether there is such now, against the respondent, is not of the remedy but of the right, and must be controlled by the law of the State where the contract sued on was made, and the same is governed by the laws of that State. Beach on Corporations, Sec. 148 ; *Ferguson* v. *Sherman*, 47 Pac., 1024; *Coffing* v. *Dodge*, 45 N. E., 928; Thompson on Corporations, Sec. 3047; *Lowry* v. *Inman*, 46 N. Y., 120; *Feru*

v. *Fidelity Bldg. Assn.*, 45 N. E., 784; *Mandell* v. *Swan Trust & Cattle Co.*, 154 Ill., 177; 45 Am. St. Rep., 124.

The stock sued on in this case was made under the authority therefor given in Sec. 3, of Chap. 43 of the Compiled Statutes, as found in the Statutes of Nebraska of 1895, and which chapter is entitled "Insurance Companies." That part of the section material to the question now in issue, is as follows: "Sec. 3. *Capital Required.* No joint stock company shall be incorporated under the provision of this act, with a smaller capital than one hundred thousand dollars, nor more than one million dollars, as may be specified in the certificate of incorporation, which stock shall be divided into shares of one hundred dollars each, of which capital at least fifty per cent shall be fully paid up in cash, and that for the remainder of its capital there are in its possession, notes of its stock holders, secured by at least one surety, or by mortgages on unincumbered real estate, within this State, worth at least twice the amount of such notes, which notes or other security shall be approved by the State Auditor."

The section of the constitution which must be considered in connection with the language above quoted, is a part of Art. 11, being Sec. 4 of the subdivision of said Art. 11, entitled, "Miscellaneous Corporations," and reads as follows:—

"In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted, the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock." *Sawyer* v. *Hoag*, 17 Wal. U. S., 610; *Williams* v. *Taylor*, 24 N. E., 288-290; *Gilberth* v. *Gaylord*, 34, Ohio St., 305; *State* v. *German Savings*

*Bank,* 70 N. W., 221; *Van Pelt* v. *Gardner* 75 N. W., 874.

In addition to the authorities already cited upon this subject, the court will find the following cases instructive: *Merrimac Mining Co.* v. *Levy,* 54 Pa. St., 227; 93 Am. Dec., 697; *Fear* v. *Bartlett,* 32 Atl., 322.

The following cases taken from the several State and federal courts, all hold that the unpaid subscriptions to the capital stock of corporations is a trust fund. Most of them also hold that the statute of limitations has no application and does not begin to run until a call or demand for payment is made, or until the corporation becomes an adjudged insolvent and the creditors can proceed to collect the same. *Glenn* v. *Semple,* 80 Ala.; 159; 60 Am. Rep., 92; *Lehman* v. *Glenn,* 6 So., 44; *Crandall* v. *Lincoln,* 52 Conn., 73; 52 Am. St. Rep., 560; *Herman* v. *Page,* 62 Cal., 448–450 and 464; *Coleman* v. *Howe,* 30 N. E., 725 (Ill.); *Jackson* v. *Traer,* 64 Ia., 469; 20 N. W., 764; Lane's Appeal, 105 Pa. St., 49; 51 Am. Rep., 166; *Young* v. *Erie Iron Co.,* 31 N. W., 822 (Mich.); *Walburn* v. *Chenault,* 23 Pac., 661 (Kan.); *Mackay* v. *Elwood,* 41 Pac., 919; *Ogden Clay Co.* v. *Harvey,* 9 Utah, 497; 35 Pac., 510; *Noble Mer. Co.* v. *Mt. Pleasant Co-op.,* 18 Utah, 213; 42 Pac., 869; *Farnsworth* v. *Robbins,* 31 N. W., 349; *Hastings* v. *Drew,* 76 N. Y., 16; *Goebec Int. Co.* v. *Iron Chief Min. Co.,* 47 N. W., 726; *Shickle* v. *Watts,* 94 Mo., 410; *National Trust Co.* v. *Miller,* 33 N. J. Eq., 155; *Priest* v. *Glenn,* 51 Fed., 405; *Hawkens* v. *Glenn,* 131 U. S., 515; *Fogg* v. *Blair,* 139 U. S., 118; Thompson on Corporations, Secs. 2002–7, Secs. 3779–90 and 81; Cook on Stockholders, Sec. 195; Beach on Private Corporations, Vol. 2, Sec. 568, 569. The doctrine is fairly stated in the case of *Wyeth Hdw. & Mfg. Co.* v. *James-Spencer-Bateman Co.,* 47 Pac., 604,

*George Q. Rich, Esq.*, and *A. T. Schroeder, Esq.*, for respondents.

By expressly fixing the maturity of the one class of obligations at call, and providing in the same section for the giving of another class of obligations, without making the same provisions, the Legislature precludes the presumption that such other obligations are to be payable only on call. The maxim, "Expressio unius est exclusio alterius," applies to this case. Sutherland on Statutory Construction, Sec. 327.

In the case at bar there was no written agreement of subscription, and even if there had been, all such prior agreements are merged in the subsequent secured promissory note and superseded and discharged all liability on stock subscriptions as such. *Baxter* v. *Downer*, 29 Vt., 412; *Smith* v. *Furno*, 16 Amer. Dec., 618; *Stowe* v. *Russell*, 36 Ill., 18; *Hargrave* v. *Conroy*, 19 N. J. Eq., 281; *Mc Donough* v. *Kane*, 75 Ind., 181; *Hadden* v. *Dimmick*, 13 Abb. Pr. N. S., 135.

This rule of merger is applied to just such cases as the one at bar in *Union Cent. Life Ins. Co.* v. *Curtiss*, 35 Ohio St., 343; *Howland* v. *Edmunds*, 23 How., Pr. 159.

In effect the case of *Gilbreth* v. *Gaylord* (cited by appellant) has been overruled in the later cases of *Union Ins. Co.* v. *J. Curtiss*, 35 Ohio St., 343; *Union Ins. Co.* v. *N. Curtiss*, 35 Ohio St., 357.

The following cases hold that the note was an absolute promise to pay, and therefore barred: *White* v. *Haight*, 16 N. Y., 310 (and cases); *Savage* v. *Medbury*, 19 N. Y., 32; *Union Cent. Life Ins. Co.* v. *Curtiss*, 35 Ohio St., 343; *Howland* v. *Edmunds*, 24 N. Y., 307; 23 How., Pr. 159, and cases; *Osgood* v. *Strauss*, 55 N. Y., 672; 65 Barb., 627; May on Insurance, Vol. 2, Sec. 549, 549

a; Wood on Limitations, Sec. 158; *Railroad* v. *Mason*, 16 N Y., 451; *Tuckerman* v. *Brown*, 33 N Y., 297; *Williams* v. *Taylor*, 24 N. E., 289; *Goshen Turnpike Co.* v. *Hurtin*, 6 Am. Dec., 273; *Hibernia T. Co.* v. *Henderson*, 11 Am. Dec., 602 (Penn.); *Williams* v. *Taylor*, 24 N. E. Rep., 289.

Numerous cases are cited to the proposition that unpaid subscription to corporate stock is a trust fund. With this we have no quarrel. We only deny the application of the doctrine made by the appellant.

(a) Because, by authorities already cited, this is not a stockholders' liability as such, but a liability on a secured promissory note given in payment of stock and of no other effect than if given for borrowed money.

(b) Even under the trust fund doctrine as appellant claims it to be, this action would still be barred, as shown by appellant's own cases. "But it is only when the company has been dissolved or has become insolvent, that this equitable doctrine arises." *Fear* v. *Bartlett*, 32 Atlantic, 323.

Since the company did not become insolvent until 1897, the note sued on (or stock subscription, if it can be treated as such) was barred before the obligation became a trust fund.

(c) The trust-fund doctrine, properly understood, carries with it no such consequences as are claimed for it by appellant. *Wabash & C. Ry. Co.* v. *Ham*, 114 U. S., 594; *Peters* v. *Bain*, 133 U. S., 691; *Fogg* v. *Blair*, 133 U. S., 538; *County of Morgan* v. *Allen*, 103 U. S., 508; *Hollins* v. *Coal Co.*, 150 U. S., 381; *Wyeth Hdw. Co.* v. *James-Spencer-Bateman Co.*, 47 Pac., 604.

Let us see whether or not this contract, interpreted by the laws of Nebraska, creates a trust such as will prevent the statute of limitations from operating. The Supreme

Court of Nebraska has answered in the negative by hold-
ing that there was nothing in the relation of the parties
to prevent the statute of limitations from applying.
*National Bank* v. *Green*, 17 N. W., 86; S. C., 20 N.
W., 754.

Where the liability and the remedy against the stock-
holders are statutory, they are confined in their operation
to the limits or the sovereignty creating the corporation,
and without extra territorial force or obligation. *May*
v. *Black*, 30 Am. & Eng. Corp. Cas., 158; *Lowry* v.
*Inman*, 46 N. Y., 119; *Erickson* v. *Nesmith*, 87 Mass.,
234; *Bank of N. Am.* v. *Rindge*, 36 Am. & Eng. C.
C., 269–106 N.

Upon the question that this receiver has no standing in
Utah courts, we call attention also to the following
authorities: *Booth* v. *Clark*, 58 U. S., 321; *Ayres* v.
*Siebel & Co.*, 82 Iowa, 347; *Parker* v. *Lamb & Son*, 92
Iowa, 245; High on Receivers, Sec. 289; Beach on
Receivers, Sec. 680; *Fitzgerald* v. *Fitzgerald*, 59 N. W.,
843.

The last is a Nebraska case, and shows that its courts
would not recognize the right which is here claimed for
this plaintiff.

### STATEMENT OF FACTS.

The plaintiff, as the duly appointed receiver of the
Omaha Fire Insurance Company, a corporation organized
in Nebraska under the laws thereof, seeks to recover for
the benefit of the creditors of said corporation, which is
alleged to be insolvent, upon a promissory note payable
on demand, which is alleged to have been made by the
defendants under and by virtue of Sec. 3 of Chap. 43,
Compiled Statutes of Nebraska, set forth in the com-
plaint.

In addition to the various allegations of the complaint showing the authority of the receiver to sue in this case, such as the appointment of the receiver, on March 31st, 1897, the insolvency of the corporation, the judgment of the creditors against the corporation, the insufficiency of the corporate assets to pay such judgment, and the order of the court authorizing and directing the commencement of this action, it is alleged that the company was capitalized for the sum of $100,000, divided into 1,000 shares of $100 each; that the defendant Thatcher became a subscriber for twenty-five shares of said stock, amounting to $2,500, of which amount he paid in cash $1,250 on April 24, 1889, and then gave his stock note, due on demand, for the balance of said subscription, amounting to $1,250, to said company; that the said note was delivered and the said payment made under and in pursuance of Sec. 3, Chapter 43, above quoted; that in pursuance of said payment, and the making of said note, said corporation issued and delivered to said Thatcher a certificate evidencing his payment, and constituting him a stockholder for twenty-five shares in said corporation.    That the amount remaining unpaid on the stock notes to the corporation amounts to $15,000, of which defendant's note constitutes a part.    That the corporation property has been exhausted; that no call or demand had ever been made by said corporation or said receiver for the payment of said note until made by said receiver under the order of the court after such insolvency of the corporation.

On the trial it was stipulated that the court may consider any Supreme Court decisions or Statutes of Nebraska deemed pertinent, the same as if set forth in the complaint.  To this complaint, the defendant Thatcher interposed a demurrer on the ground, second, "that the purported cause of action set forth in the complaint is barred

by the provisions of Sec. 2875, Revised Statutes of Utah
of 1898, and especially subdivision two of said section,
and also by Sec. 314 of the Compiled Laws of Utah, 1888,
and also by the provisions of Sec. 3143 of the Compiled
Laws of Utah, 1888." The demurrer was sustained. The
plaintiff waived his right to amend, and elected to stand
upon his complaint. Thereupon, the court rendered judg-
ment dismissing the action with costs. From this judg-
ment plaintiff appeals.

After stating the facts, MINOR, J., delivered the opin-
ion of the court.

Under the issue raised in this case, it is necessary to
determine whether the laws of Utah or the laws of
Nebraska govern and control in this case. It is con-
ceded that the statute of limitations falls within the
remedy, and the law of Utah controls in so far as the
remedy is concerned as applied to an existing and enforci-
ble cause of action. When the cause of action in fact
arose, or whether or not any cause of action ever existed,
or now exists, against the respondent, is not of the remedy,
but of the right, and therefore is to be controlled by the
law of the State where the contract sued upon was made,
and the same is governed by the laws of that State. The
law of the forum controls in respect to the cause of action
so far as the time within which it must be enforced is con-
cerned, but the law of Nebraska controls as respects the
time when the cause of action matured or arose under a
contract made in pursuance of its laws. If, under the
laws of Nebraska, no cause of action existed against
respondent upon the note sued upon until the happening
of a certain event, then the Statute of Limitations of
Utah began to run only from the time such cause of action
arose in Nebraska, and irrespective of what the laws of

Utah might be. The statute of limitations applies only to existing causes of action.

Thompson in his work on Corporations, Vol. 3, Sec. 3047, says: "If the liability of a resident stockholder of a foreign corporation rests in contract merely, as in case of the obligation to pay for shares of stock, which he enters into, who has subscribed for them, or who has purchased them from a subscriber or holder before payment, and if the obligation thus assumed is valid and subsisting according to the laws of the domicile of the corporation, it will be good everywhere and upon obvious principles, will be enforced in the court of every other State or country."

Mr. Beach, in his work on Private Corporations, in Sec. 148, says: "Where a person becomes a stockholder in a corporation organized under the laws of a foreign State, he must be held to contract with reference to all the laws of the State under which the corporation is organized and which enter into its constitution; and the extent of his individual liability as a stockholder to the creditors of the company must be determined by the laws of that State, not because such laws are in force in the other State, but because he has voluntarily agreed to the terms of the company's constitution. It is equally clear, both upon principle and authority, that this liability may be enforced by creditors wherever they can obtain jurisdiction of the necessary parties. This does not depend upon any principle of comity, but upon the right to enforce in another jurisdiction a contract validly entered into. The validity, interpretation, and effect of the act imposing the liability are determined by the law of the State creating the corporation."

The liability claimed here is upon contract, and must be considered and enforced by courts in accordance with the laws in force when and where the contract was made.

This is the rule in Utah. *People's Bldg. & Loan Assn.* v. *Fowble,* 18 Utah, 206; 53 Pac., 999; *Ferguson* v. *Sherman,* 47 Pac., Rep., 1024; First Beach on Private Corporations, Sec. 148; *Hancock Nat'l Bank* v. *Ellis,* 44 N. E. Rep., 349; *Lowry* v. *Inman,* 46 N. Y., 119; *Mandell* v. *Swan Trust & Cattle Co.,* 154 Ill., 177; First Thompson on Corporations, Sec. 1136.

Having determined that the law of Nebraska controls, it next becomes important to determine at what time the cause of action sued upon accrued for the purpose of enforcing the same for the benefit of the creditors of the corporation of which the respondent was a member and for whose benefit he made the stock or subscription note upon which this action was brought. As appears from the complaint, the stock note sued upon was made under the authority given by Sec. 3, Chap. 43 of the Compiled Statutes of Nebraska, entitled "Insurance Companies" and so far as material reads as follows:

"No joint stock company shall be incorporated under the provisions of this act with a smaller capital than one hundred thousand dollars, nor more than one million dollars, as may be specified in the certificate of incorporation, which stock shall be divided into shares of one hundred dollars each, of which capital at least fifty per cent shall be fully paid up in cash, and that for the remainder of its capital there are in its possession notes of its stockholders, secured by at least one surety or by mortgages on unincumbered real estate, within this State, worth at least twice the amount of such notes, which notes or other security shall be approved by the State auditor."

Subdivision 4 of Article 11 entitled "Miscellaneous Corporations" of the constitution of Nebraska should be considered in connection with the above statute. It reads as follows:

"In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock."

The stock note sued upon reads as follows:

"$1,250.         OMAHA, NEBRASKA, April 24, 1889.

"On demand after date we, or either of us, promise to pay to the Omaha Fire Insurance Company, or order, $1,250, for value received, payable at the Nebraska National Bank of Omaha, Nebraska.

"G. W. THATCHER.<br>"S. T. JOSSELYN."

The object of the incorporation formed was to write contracts of insurance, insuring property of its owner against loss by fire. The statute required a capital stock of not less than one hundred thousand dollars, fifty thousand of which must be paid in cash ; the remaining fifty thousand was required to be secured to be paid to the company by notes secured by one surety or by mortgages, and in such a manner as would be best calculated to secure payment of the same when needed and called for by those in whose hands the trust was imposed. No form of note was prescribed. The time of payment was left to the judgment of the members of the corporation. These officers made these stock notes payable "on demand," which was in accordance with the law and the probable business requirements of the corporation. Under these circumstances, was the note barred by the statute of limitations, as claimed by the respondent under his demurrer. The note was dated April 24, 1889, and

payable on demand, after date. This action was commenced May 27, 1898. The date of the insolvency of the corporation was the 24th day of February, 1896. The court determined the amount of the claims due, and that the property of the corporation was exhausted December 27, 1897. No demand was ever made by the corporation or its receivers until December, 1897. The respondent claims that the note was negotiable in form, payable on demand, and therefore it was payable forthwith or within six months from date under the Utah statute, and within one year under the Nebraska statute; that its demand of payment could have been made at once, and if not paid, the statute of limitations would at once commence to run in favor of the respondent. This claim is based upon the theory that the stock note was given in full payment and liquidation of the subscription for stock, and it should be treated the same as any ordinary note in any commercial transaction, and that it would be governed by the law applicable to negotiable instruments given in payment of ordinary debts. We are of the opinion that this contention is incorrect. The corporation required capital to pay losses and expenses. Losses are usually met by collecting premiums, but a condition may arise whereby losses overbalance the premiums, so that a fixed capital is required to meet all emergencies. The fifty thousand dollars cash capital had to be paid at once as a fund for all requirements. As the remaining fifty thousand might not be required at once, and possibly not at all, the law gave the stockholder the privilege of retaining it, but required notes to be given to evidence the obligation, with securities, so that the same could be collected when called upon by those in whose hands the trust was imposed. The statute and law under which the stock note was given, and the object and purposes of the law, the

object and contemplation of the parties availing themselves of the privileges of the law of Nebraska in forming the corporation, should control rather than the mere form and wording of the contract. The parties would hardly enter into a contract payable on demand if they intended the contract to be payable forthwith without any demand. Fifty per cent of the subscription was payable in cash at the time of the making of the subscription, and the balance was to be represented by secured notes. To hold that the fifty per cent secured by the notes was due forthwith will be to hold that under the statute and the contract as made, that fifty per cent of the subscription was payable in cash and the balance payable forthwith, or in other words, that the whole capital stock should be paid in cash, or that which would amount to that. This construction would not be reasonable but would be contrary to the plain reading of the statute and the intention of the parties in forming the corporation under it. When the stock notes were made payable on demand, the parties must have intended that they should be paid upon call by the corporation when it required part or all the proceeds thereof, and not before. This sum might be required very soon, and might not be required for years, and possibly not at all, but it remained a part of the capital stock of the corporation to be used for the purposes and objects for which the capital stock was intended under the statute creating it, and the subscribers were liable on their promised subscription to the capital stock for the payment of its obligations. This subscription, whether paid in cash or represented by notes, was a part of the capital stock and could not be diverted or lost to the corporation by any fault of the corporate officers, or other devices.

In *Sawyer* v. *Hoag*, 17 Wall., 610, the court said:

" Capital stock or shares of a corporation, especially

19 Utah—15

the unpaid subscriptions to such stock, or shares, constitute a trust fund for the benefit of the general creditors of the corporation.    This fund can not be defeated by simulated payment of the stock subscription nor by any device short of an actual payment in good faith.''

Had the amount subscribed for been all paid in cash, it could not be claimed that any part of it would be diverted to any other purpose than to carry out the objects of the corporation.    The rule as to unpaid subscriptions when the corporation becomes insolvent, is enforced by courts in requiring that the same be applied for the benefit of the creditors.    The creditor of the corporation would have no conceded right to call for these unpaid subscriptions while the corporation was solvent, regardless of the Statute of Limitations, and if the stockholders having the management of the corporation should refuse or neglect to call for such payment, possibly with intent of permitting a bar of the statute, the result might be to reduce the capital stock of the corporation one half to the wrong of the creditors and of the stockholders alike.    So the courts have almost universally held that this capital stock is a trust fund for the benefit of the creditor of the corporation, and that the Statute of Limitations has no application and creates no bar until the creditors have had an opportunity to enforce payment of the unpaid portion of their claims, irrespective of the time that has elapsed between the making of the subscription and the insolvency of the corporation,— the insolvency of the corporation being the cause that made it necessary to collect such unpaid subscriptions.    The Statute of Limitations does not commence to run until there is a cause of action.    In this case no cause of action existed until after demand. The object and purposes of the parties under the statute and constitution forbids the construction that '' on

demand" means forthwith. The parties must have intended the term "on demand" to have a special significance, and to mean on an actual call or demand for payment, and not merely to be governed by the law controlling ordinary negotiable instruments. To hold otherwise would be to obliterate from the case the object for which the stock notes were given.

The Supreme Court of New York, in *Williams* v. *Taylor*, 24 N. E. Rep., 288, in discussing this subject says:

"Where the thing promised is the payment of a sum of money, no actual demand will, in general, be necessary, notwithstanding the terms of the contract, but it is nevertheless in the power of the parties so to frame their engagements as to make a preliminary demand essential. And so likewise, though there be nothing in the terms of the instrument to take the case out of the general rule, the attending circumstances and the nature of the duty may be such that the words which mention a demand or request will have a special significance, and will require a preliminary demand to be made."

In the case of *Kilberth* v. *Gaylord,* 35 Ohio State, 305, where the action was on a demand note like the case at bar, the court held that the Statute of Limitations did not apply to such demand notes. The court says:

"The plaintiffs in error and their associates became incorporated for the purpose of carrying on the business of life insurance. The only means of the Company for doing business consisted of its stock subscriptions. In payment, or to secure the payment of these subscriptions, the subscribers executed their non-negotiable notes to the company, payable on demand. These notes must be construed in connection with the nature of the business of the corporation, and in view of the object intended by the parties in giving the notes. The notes represented the

fund intended ultimately for the payment of debts if they should be required for such purpose. To hold that the statute of limitations began to run from the time of the execution of the notes, would defeat the purpose intended, and work a fraud, not only on the policy holders, but on such of the stockholders as might see fit to pay the cash in discharge of their liability."

In a similar case arising in Nebraska, *State* v. *German Savings Bank*, .70 N. W., 221, the court construed and applied Sec. 4 of Art. 11 of the Nebraska constitution. The court held, we quote from the syllabi:

" First, that this statute refers to liabilities of stockholders upon their stock; second, that the constitution makes the liability of subscribers for unpaid subscriptions for the purpose of paying debts of the corporation a secondary liability, to be enforced only after the amount of the debts has been judicially ascertained and other corporate property has been exhausted; third, that a proceeding by the receiver of an insolvent bank to collect unpaid subscriptions to its capital stock, is on behalf of creditors of the corporation, and is a 'case of claims' against the corporation, within the meaning of the constitution; fourth, that the statute quoted, in so far as it attempts to authorize actions to recover unpaid stock subscriptions before the corporate debts have been judicially ascertained and the corporate property exhausted, is in conflict with the constitution and void."

So, if there was no enforcible right of action, there could be no application of the statute of limitations.

In the case of *Van Pelt* v. *Gardiner*, 75 N. W. Rep., by the Supreme Court of Nebraska, the court held that the statute of limitations does not apply until the property of the corporation is exhausted, and then the liability of the subscriber attaches. See also *Merrimac Mining Co.* v. *Levy*, 54 Pa. St., 227; 93 Am. Dec., 697.

In *Fear* v. *Bartlett*, 32 Atl., 322, the court said:

"In dealing with the defendant's subscription, we have treated it as a Virginia contract. The company was chartered by that State, with its office and place of business in that State, and, although the subscription was made in this State, the contract was to be performed in Virginia, and, this being so, the rights and liabilities of the parties under it are to be determined by the law of that State."

The leading case relied upon by the respondent in opposition to the principles here laid down is the case of *Howard* v. *Edmund*, 24 N. Y., 307; 23 How. Pr., 159; and some other cases from New York. These cases are examined, and distinguished from the case at bar in a recent case from New York, reported as *Williams* v. *Taylor*, 24 N. E. Rep., 288. As there held, these cases were all based upon the provisions of special statutes and determined accordingly. In *Williams* v. *Taylor*, it was held that the statute of limitations would not commence to run against the subscriber until a demand or call was made. The following cases bear upon the question or hold that unpaid subscriptions to the capital stock of a corporation is a trust fund and that the statute of limitations has no application or does not begin to run until call or demand of payment is made or until the corporation be adjudged insolvent. *Glenn* v. *Semple*, 80 Ala., 159; 60 Am. Rep., 92; 2 Beach on Private Corporations, Secs. 568, 569; Cook on Stockholders, Sec. 195; 2 Thompson on Corporations, Secs. 2002 to 2007, Sec. 3779; *Hawkins* v. *Glenn*, 131 U. S., 319; *Hatch* v. *Dana*, 101 U. S., 210; *Hill* v. *Merchants' Ins. Co.*, 134 U. S., 515; *Scoville* v. *Taylor*, 105 U. S., 552; *Germantown Pass. Ry. Co.* v. *Fittler*, 100 Am. Dec., 546; *Ogden Clay Co.* v. *Harvey*, 9 Utah, 497; *Noble Mercantile Co.* v. *Mt. Pleasant Co-op.*, 12 Utah, 213; *Thomas* v. *Glendenning*,

13 Utah, 551; *Ingwersen* v. *Edgecomb*, 42 Neb., 740; *Van Pelt* v. *Gardner*, 75 N. W. Rep., 874; *Herman* v. *Page*, 62 Cal., 448; *Payne* v. *Bullard*, 55 Am. Dec., 74; *Thompson* v. *Reno Savings Bank*, 19 Nev., 103.

This court has already held that the property of a corporation is a trust fund to the extent that it must be fairly and honestly applied to the purpose for which it was obtained and held by virtue of the law creating the corporation, and that in case of an express trust created by mutual confidence and contract of the parties the statute of limitations does not begin to run until the *cestui que* trust has actual or constructive notice of the repudiation of the trust. *Thomas* v. *Glendenning*, 13 Utah, 47; *Wyeth Hardware Co.* v. *James-Spencer-Bateman Co.*, 15 Utah, 110; *People's Bldg. Loan & Sav. Asso.* v. *Fowble*, 18 Utah, 206; 53 Pac., 999; Wood on Statute of Limitations, 2d ed., 386; Morse on Banks and Banking, 2d ed. 39; *Collins* v. *Brimfield Coal Co.*, 150 U. S., 371.

The property of the corporation was exhausted, and it became insolvent December 27, 1897. This action was brought in May, 1898. It appears to us that no cause of action existed before December 27, 1897, against the respondent. The unpaid stock subscriptions, including the note in question, constituted a trust fund out of which the debts due the creditors of the corporation, when the exact amount justly due thereon had been ascertained, and the corporate property had been exhausted should be paid.

We are of the opinion that in view of the statute and constitution of Nebraska and in view of the decisions of the Supreme Court of that State and other authorities bearing upon this question, that the court erred in sustaining the demurrer and in dismissing the action and in holding that the cause of action was barred by the statute

of limitations.   The case is reversed and remanded with directions to the district court to vacate, and set aside the judgment, and to grant a new trial.   Appellant is entitled to costs.

BARTCH, C. J., and BASKIN, J., concur.