STANLEY TOMALA, Respondent, *v.* PEERLESS INSURANCE COMPANY, Appellant.

Fourth Department, January 15, 1964.

*Charles R. Sandler, M. Robert Koren* and *Peter D. Cook* for appellant.

*Moynihan, Scalzo & Hamsher* (*Richard O. Robinson* and *James A. Moynihan* of counsel), for respondent.

*Per Curiam.* The question here presented is whether a policy of automobile liability insurance was in force and effect at the time of the happening of an accident on July 4, 1958.

The plaintiff sued one, Thomas Britton, for damages arising from that automobile accident. The defendant carrier disclaimed liability and refused to defend Britton claiming that its policy had been cancelled. Following an inquest, the plaintiff was awarded judgment on December 21, 1958 in the amount of $6,786 plus costs. Thereafter the plaintiff brought this action

under section 167 of the Insurance Law and recovered a judgment against the defendant which gives rise to this appeal.

Prior to May 6, 1958 Britton had secured automobile liability insurance through Raymond Siembida as an agent for an insurance company other than the defendant. Siembida lost his agency contract and early in 1958 began to write liability insurance through his brother, Chester, an authorized agent of the defendant. It would appear that Britton's policy with the other insurance company was to expire on May 6, 1958. On April 26, 1958, Siembida ordered a replacement policy from the defendant through his brother and filed a certificate of insurance (commonly called an FS-1) with the Bureau of Motor Vehicles. Thereafter a policy was issued by the defendant and delivered to Raymond Siembida.

On June 4, 1958 a second FS-1 was filed with the Bureau of Motor Vehicles containing the actual policy number which had not appeared on the original certificate. Britton did not pay the premium for the insurance with promptness and Raymond Siembida returned the policy to his brother with a marking on its face, "Gone to State Farm". The defendant, by notice dated May 15, 1958, filed with the Bureau of Motor Vehicles a notice of the termination of the policy (FS-4) effective May 6, 1958 (the effective date of the policy). On June 19, 1958 a change of car indorsement was issued to Britton by Chester Siembida and on the same date a further FS-1 was filed by Raymond Siembida.

Following the accident, on July 7, 1958 a report of a motor vehicle accident (MV-104) was filed on behalf of Britton after being prepared by Raymond Siembida and a copy furnished to the defendant. Two other FS-1's were filed by Raymond Siembida, one dated July 17, 1958 showing the defendant as the insurance carrier without an assigned policy number and another one, August 29, 1958 using the number of the policy originally issued. The defendant filed a further notice of termination (FS-4) dated July 1, 1958 indicating the effective date of termination, again as May 6, 1958.

There is no question that Raymond Siembida was authorized to bind the defendant for automobile liability coverage and was further authorized to issue certificates of insurance. Britton paid $68 of the premium on May 21 and thereafter paid the balance of $14.20 in full before the happening of the accident. Concededly Britton was never notified by anyone at any time that his policy of automobile liability insurance was cancelled. When Siembida returned the policy marked "Gone to State

Farm '', that information was inaccurate and the policy was really returned because the premium had not then been paid. Britton never requested that this policy be cancelled and assumed that he was at all times covered by the defendant's policy.

The defendant, by authorizing Raymond Siembida to bind it for liability coverage and to issue certificates of insurance, cloaked him with a mantle of authority and placed in his hands the power effectively to grant coverage. Thus did he become the agent of the defendant. The company should not now be permitted to assert that there was no coverage unless it complied with the provisions of the Vehicle and Traffic Law. Section 93-c of the Vehicle and Traffic Law (now § 313) then in effect, required the insurer to give the insured 10 days' notice of cancellation for nonpayment of premium, which was not done. It also required the insurer to file with the Commissioner of Motor Vehicles a notice of cancellation or termination not later than 30 days following its effective date.

With the advent of compulsory insurance, the obvious purpose of the statute was to assure, insofar as was possible, that there would be no certificate of registration for a motor vehicle outstanding without concurrent and continuous liability insurance coverage. On page 182 of *Teeter* v. *Allstate Ins. Co.* (9 A D 2d 176) we said: '' Once an insurer issues a binder or insurance policy and gives the insured a certificate of insurance for filing with the Bureau of Motor Vehicles, it is barred from asserting that the insurance coverage failed to attach on the date of issuance or that it failed to continue in force thereafter, during the period during which the certificate of insurance remained uncancelled. A certificate of insurance constitutes a representation by the insurance company to the public and to the State authorities that valid insurance coverage is in effect.''

In this case, there was no manner in which Britton could protect himself by procuring other insurance since he was without knowledge of its cancellation. Nor could the Commissioner of Motor Vehicles put in motion the necessary steps to recall the registration of Britton as an uninsured motorist because he had in his files certificates of insurance showing Britton to be covered. Under the circumstances here Britton should not be penalized because of the activities of the defendant and its representatives which were unknown to him and much less the plaintiff as an innocent third party and for whose protection the statutory scheme was devised.

Therefore, the judgment should be affirmed.

WILLIAMS, P. J. (dissenting). In deciding this case in favor of the plaintiff, the majority hold that it was necessary for the defendant to notify the so-called insured of the cancellation of the policy under section 93-c of the Vehicle and Traffic Law (now § 313). Such failure, it is said, rendered the policy in full force and effect on the date of the accident which caused plaintiff's injury. I must disagree with this legal conclusion. That section requires notice to the insured only in the event of "cancellation by the insurer or failure to renew by the insurer".

Actually the policy was returned to the company for cancellation by the broker for the so-called insured on the stated grounds that the insured had purchased insurance in another company and that the proposed policy therefore was not needed. Thus, defendant was entitled to treat this policy as one which had been rejected by the prospective insured and it was properly marked cancelled by the claimed insurer. Indeed, the actions of Raymond Siembida, who it must be remembered was acting primarily as an agent of the insured with very limited powers of agency for the defendant, were calculated to produce this result.

The majority also rely on *Teeter* v. *Allstate Ins. Co.* (9 A D 2d 176) but nothing that was said in that case has any bearing on the present controversy. It was decided under an entirely different set of facts. There a "binder policy" had been issued and was outstanding during the period in question. An effort was made to rescind *ab initio* which this court rejected. In the present case there was no policy in existence at the time of the accident in question nor had there been for some time prior thereto.

A certificate of insurance, sometimes called an FS-1, had been filed with the then Bureau of Motor Vehicles by the insurance broker. It is conceded that the broker had the authority to file such forms for the company under proper and limited circumstances. In other words, he had the right to "bind" and to issue certificates pending the acceptance of a formal application by the company and the issuance of a policy. However, he had no right to issue such forms, as he did in this case, simply as a matter of his own convenience and to protect himself as against the so-called insured. Nor could he, by filing an FS-1, reinstate a policy that he, a broker for the so-called insured, had surrendered for cancellation.

The defendant cannot be estopped because of the performance of an act not authorized by it. This broker had no authority

to effect the reinstatement of a cancelled policy by filing an FS-1 form when he well knew that the policy had ceased to exist.

I would reverse the judgment appealed from.

BASTOW, GOLDMAN and NOONAN, JJ., concur in *Per Curiam* opinion. WILLIAMS, P. J., dissents and votes to reverse and dismiss the complaint in an opinion.

Judgment affirmed, with costs.