James F. Niehoff, J.
Plaintiff, American Mutual Insurance Company of Boston, brings this declaratory judgment action seeking a determination as to the rights of the parties with respect to the matter of insurance coverage for an accident which occurred on June 15, 1975.
On the hearing which was held on October 30, 1975 one witness testified and, pursuant to stipulation, the attorneys for the respective parties read into the record an agreed statement of facts.
The central facts as spelled out in said stipulation are as follows:
While operating a motorcycle on June 15, 1975 Thomas Lo Bianco, an infant, was injured when his motorcycle and a motor vehicle owned and operated by defendant Mildred Klein came into contact. Thereafter, on or about July 9, 1975 Thomas Lo Bianco through his mother and natural guardian, Dorothy Lo Bianco, and his mother individually, instituted a negligence action against the Kleins claiming damages in the *1066 sum of $275,600 for bodily injury, loss of services, medical expenses and property damage.
It is undisputed that the plaintiff, American Mutual, had issued its liability policy covering the defendants, Samuel and Mildred Klein, for a period from April 20, 1974 to April 20, 1975. Prior to the expiration of such policy, apparently on or about March 27, 1975, the plaintiff issued and delivered to the Kleins its renewal certificate (FS-20) to cover the period from April 20, 1975 to April 20, 1976.
The premium on the renewal had not been paid as of the date of the accident referred to above (June 15, 1975). A check for the amount of the premium payable to the plaintiff was postmarked from Freeport, New York, on June 16, 1975 the day after the accident and was received by plaintiff on June 17, 1975. Thereafter, said check was returned by the plaintiff with a covering letter advising the Kleins that the policy which expired on April 20, 1975 had not been renewed because of their failure to pay the premium.
It appears that subsequent to the date that the plaintiff claims its renewal certificate was not in effect (April 20, 1975), it received a claim for windshield damages on such policy from the Kleins, and, on June 10, 1975, paid the claim under the terms of the policy.
It is undisputed that at no time prior to the accident had plaintiff mailed any notice of cancellation of insurance to the defendants Klein or filed a notice of cancellation with the Commissioner of Motor Vehicles, or given written notice of denial of coverage to the defendants Lo Bianco.
Essentially, the question to be decided herein is whether or not section 313 of the Vehicle and Traffic Law applies to the case at bar. If applicable, defendants are entitled to judgment declaring that the renewal policy was in full force and effect inasmuch as plaintiff American Mutual admits that it had given the Kleins no notice of cancellation of the policy.
Insofar as pertinent section 313, which is part of article 6, provides: "No contract of insurance or renewal thereof for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation by the insurer or failure to renew by the insurer until at least twenty days after mailing to the named insured at the address shown on the policy a notice of termination, except where the cancellation is for non-payment of premium in which case ten days notice of cancellation by the insurer shall be sufficient, , pro *1067 vided, however, if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect with respect to any motor vehicles designated in both contracts.”
Thus, it will be seen that under the provisions of section 313 of the Vehicle and Traffic Law a policy of liability insurance cannot be terminated for nonpayment of premium until 10 days after the insurer mails a notice of the cancellation to the insured. As stated above, it is conceded in the instant case that no such notice was mailed to the Kleins prior to the Lo Bianco accident.
However that may be, plaintiff, on its part, argues that section 313 of the Vehicle and Traffic Law does not come into play or apply herein because there is no evidence that a certificate of insurance was ever filed by the plaintiff insurer or the insured.
Plaintiff further contends that the Kleins knew from the notice sent to them by plaintiff that payment of the premium on the renewal policy was due on April 20, 1975 and that failure to pay within the time allowed would result in termination of the policy effective as of the preceding policy period, to wit, April 20, 1975; that by failing to pay the premium within the allotted time the Kleins neglected to accept the plaintiff’s offer to renew the contract of insurance, and that, therefore, there never was any renewal of the contract and there was nothing for plaintiff to cancel or terminate.
Subdivision 1 of section 312 of the Vehicle and Traffic Law provides, in general terms, that no motor vehicle shall be registered in this State unless the application for such registration is accompanied by a certificate of insurance or other prescribed evidence of financial security.
Subdivision 4 of said section authorizes the Commissioner of Motor Vehicles to promulgate reasonable regulations to provide effective administration and enforcement of the provisions of the statute in accordance with the purposes thereof.
And, subdivision 5 of section 312 declares: "Notwithstanding any inconsistent provisions of this article, the commissioner may by regulation, in lieu of the provisions of subdivision one requiring the submission of a certificate of insurance or evidence of a financial security bond, require that an insurance identification card be presented each time a vehicle is registered or a registration is renewed in this state.”
*1068 Pursuant to the authority thus conferred upon him the Commissioner of Motor Vehicles has promulgated various regulations. Section 32.1 of the commissioner’s regulations (15 NYCRR 32.1) reads as follows: "Pursuant to chapter 1025 of the Laws of 1971, which provides that the commissioner may require that an insurance identification card be presented in lieu of the filing of certificate of insurance required under article 6 of the Vehicle and Traffic Law, the commissioner hereby provides that on and after June 1, 1972, an insurance identification card must be presented upon the processing of any registration transaction for a vehicle. The commissioner further provides that on and after such date, no certificate of insurance or notice of termination of insurance under article 6 of the Vehicle and Traffic Law shall be filed with the commissioner.” (Emphasis supplied.)
Section 32.4 of the commissioner’s regulations (15 NYCRR 32.4) reads, in relevant part, as follows: "Use of I. D. Cards for registration transactions, (a) On and after June 1, 1972, no original or renewal registration transaction will be processed for any vehicle unless an I. D. card is presented along with the registration application. One part of the I. D. card will be retained by the issuing office.”
It will readily be perceived that sections 32.1 and 32.4 of the commissioner’s regulations have altered the requirement that a certificate of insurance be filed. Instead, and in lieu thereof, the regulations require that an insurance identification card be presented each time a vehicle is registered or a registration is renewed in the State.
Manifestly, with the advent of compulsory insurance it became important to assure that there would be no certificate of registration for a motor vehicle outstanding without concurrent and continuous liability insurance coverage. Hence, by regulation the commissioner has provided that no original or renewal transaction will be processed for any vehicle unless an insurance identification card is presented along with the registration application. The identification card, issued by the insurer, takes the place of a certificate of insurance which had theretofore been required to be filed in order to register a vehicle. What, then, is the effect of the issuance of the certificate of insurance or its successor, and equivalent, the identification card?
In Teeter v Allstate Ins. Co. (9 AD2d 176, 182, affd 9 NY2d 655) the Appellate Division, Fourth Department, wrote: "Once *1069 an insurer issues a binder or insurance policy and gives the insured a certificate of insurance for filing with the Bureau of Motor Vehicles, it is barred from asserting that the insurance coverage failed to attach on the date of issuance or that it failed to continue in force thereafter, during the period during which the certificate of insurance remained uncancelled. A certificate of insurance constitutes a representation by the insurance company to the public and to the State authorities that valid insurance coverage is in effect.”
In the case at bar it is conceded that plaintiff sent to the Kleins the FS-20 form (I. D. Card) showing their policy to be effective through April 20, 1976 and while not conceding the truth thereof, plaintiff did agree that if defendant Mildred Klein were to testify she would say that she filed such form with the Department of Motor Vehicles in order to register her car on March 31, 1975. There being no contrary evidence, the court is impelled to accept such statement as true. By virtue of the commissioner’s regulations, heretofore quoted, defendant Klein’s act of presenting the I. D. card at the time she registered the vehicle was the equivalent of her filing a certificate of insurance with the commissioner. Hence, the provisions of section 313 of the Vehicle and Traffic Law came into operation and precluded plaintiff from terminating the renewal of the contract of insurance until after plaintiff had mailed a notice of termination to the defendant Klein which, admittedly, it never did.
In addition to asserting that section 313 is inapplicable for lack of proof of the filing of a certificate of insurance the plaintiff argues that since section 313 of the Vehicle and Traffic Law presupposes the existence of an insurance policy it is inapplicable herein because there was no contract of insurance in existence by reason of the fact that plaintiff’s offer to renew the policy was not accepted by the Kleins.
It is true that prior to the expiration of the policy on April 20, 1975 the plaintiff insurance company sent a notice to the Kleins showing the amount due for the renewal of the policy to be $309 for the next 12 months and showing that said payment was due on or before April 20, 1975. What is more, such notice and a second notice stated: "Failure to pay within the time allowed terminates the policy effective as of the preceding policy period” (i.e., April 20, 1975).
If common-law principles were applicable the insurer could properly argue that inasmuch as prepayment of the premium *1070 was a condition precedent to a renewal of the policy, the insurer is not bound by a renewal in the absence of such payment. However, common-law principles have been superseded by the provisions of section 313. As the Appellate Division stated in the Teeter case (9 AD2d 176, 181, supra): "Once a certificate of insurance * * * has been issued by the insurance company and filed with the Commissioner the contract of insurance ceases to be a private contract between the parties. A supervening public interest then attaches and restricts the rights of the parties in accordance with the statutory provisions. Many common-law contractual rights are restricted by the statute. Thus, for example, there is, at common law, the absolute right to refuse to renew a policy upon the expiration of its term but this is restricted by the statute so that the policy continues in force after its expiration date without a renewal, unless and until notice of termination is given in accordance with the statute.”
So, too, it must be held, that the common-law right to disclaim renewal coverage where the premium is not paid within the time specified by the insurer is restricted by the statute. Once the identification card has been issued by the insurance company and filed with the commissioner, the insurer is bound on the renewal notwithstanding nonpayment of the premium, unless and until notice of termination is given in accordance with the statute. The whole scheme of the statute would be frustrated if the insurance company were allowed to disclaim coverage with respect to a period during which the company had led the public and the authorities to believe that insurance coverage was in effect. (See dissent in Tomala v Peerless Ins. Co., 20 AD2d 206, which was rejected by the Court of Appeals, 14 NY2d 862.)
Accordingly, in the present case it must be held that plaintiff insurance company having furnished defendant Klein with an FS-20 form which was presented to the commissioner was bound on a renewal of the contract of insurance until such time as it had mailed the necessary notice of termination to the insured. Therefore, it is the decision of this court that the policy issued to the Kleins continued in effect up to and including the date of the accident and that under the terms of said policy the plaintiff had coverage in effect covering defendant Klein for the action brought against them by Thomas Lo Bianco, et ano., arising out of the accident of June 15, 1975.
It should be noted that, in any event, the court would find *1071 plaintiff to be estopped from denying the validity of the insurance policy on the date of the accident. This is so because subsequent to the date that plaintiff claims the policy was not in effect (April 20, 1975) it received a damage claim from the Kleins and actually paid the same under the terms of the policy on June 10,1975.
The remaining question concerns attorney’s fees.
The parties have stipulated that "by reason of plaintiff’s failure to defend the action brought by Lo Bianco against them the defendant Klein retained counsel who rendered legal services in the reasonable value which are in the agreed sum of $875, which would not have been rendered had plaintiff defended said action.” Since plaintiff failed in its obligation to furnish legal services thereby requiring defendant Klein to obtain counsel to represent her, she is entitled to judgment for the reasonable value of her counsel’s services which the parties have agreed amounts to $875.