Samuel TAYLOR, Plaintiff,

v.

Joseph A. KINSELLA and The New York Post, Defendants,

and

The Hertz Corporation, Defendant-Appellee.

The HERTZ CORPORATION, Third Party Plaintiff-Appellee,

v.

CENTENNIAL INSURANCE COMPANY, Third Party Defendant-Appellant,

and

News Group Publications, Inc., Third Party Defendant.

Cal. No. 1048, Docket 83–9070.

United States Court of Appeals, Second Circuit.

Argued April 2, 1984.

Decided Aug. 16, 1984.

Michael F. Close, New York City (Barry, McTiernan & Moore, New York City, of counsel), for third party defendant-appellant.

Philip Hoffer, New York City (Rose L. Hoffer, New York City, on the brief), for third party plaintiff-appellee.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges, and BRIEANT, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

On May 19, 1982, Samuel Taylor, an employee of the New York Post was injured by a truck driven by a fellow worker. The truck had been leased to the Post by the Hertz Corp. Taylor sued the driver, the Post, and Hertz in the Southern District of New York, alleging negligent operation by the driver, negligent maintenance by the Post, and negligent failure to inspect and test by Hertz.

Taylor's co-employee and the Post were immune from suit under New York's Workers' Compensation Law, *see* N.Y.Work. Comp.Law §§ 29(6) & 53, and Taylor's complaint against them was dismissed. This meant that Hertz could not be held derivatively liable for the dismissed defendants' negligence. *Rauch v. Jones*, 4 N.Y.2d 592, 596, 176 N.Y.S.2d 628, 152 N.E.2d 63 (1958). Hertz could, however, be held liable for its own negligent acts.

On June 2, 1983, Hertz brought a third-party action against the Post's parent company, News Group Publications, Inc., (hereinafter "the Post") and Centennial Insurance Company, the Post's automobile insurance carrier. Although, for some undisclosed reason, the parties have not seen fit to make the third-party pleadings part of the record on appeal, the parties inform us that Hertz sought recovery against Centennial as an additional insured under the Centennial-Post policy. The lease agreement between Hertz and the Post provided that the Post would procure a standard automobile liability policy for the leased vehicles covering both Hertz and the Post. The Centennial policy did cover "lessors" such as Hertz, but provided in a "Hired Autos" endorsement that a lessor "is not an insured for liability resulting from defects or faulty workmanship," the gravamen of plaintiff's claim against Hertz.

Hertz asserts a right of recovery against Centennial, however, because of a "Certificate of Insurance", issued by Centennial, which, under the heading "Description of Operations/Locations/Vehicles", stated:

It is agreed that the Hertz Corporation Truck Division 7 Entin Road, Parsippany, New Jersey, is included as additional insured for all vehicles leased by them to [the Post] including replacement and substitute vehicles per leasing contract and also included as Loss Payee on Physical Damage A.I.M.A.

Alternatively, Hertz argues that, if the Centennial policy does not provide coverage for Hertz, the Post is liable for breach of the leasing agreement, a contention with which we are not now concerned.

Plaintiff's claim against Hertz has been settled with the consent of all parties for $100,000. Following a bench trial before Judge Pollack, Centennial has been held liable for the full amount of the settlement plus $9,000 in court costs and attorneys' fees. For reasons hereafter assigned, we reverse.

As a predicate for its finding of liability, the district court stated:

The rental agreement between Hertz and [the Post] clearly contemplated coverage broad enough to protect Hertz herein. Centennial must be held to have incorporated such broader coverage in its insurance policy by means of the insurance Certificate and the conflict between such incorporation and the "Hired autos endorsement" is resolved in favor of Hertz and against Centennial.

We believe that this determination was error.

The genesis of the Certificate of Insurance is obscure. We question Hertz's as-

* Of the United States District Court for the South-   ern District of New York, sitting by designation.

sertion that the Certificate was written to comply with the provisions of New York's financial responsibility laws. Section 312 of New York's Vehicle and Traffic Law provides that no motor vehicle shall be registered in New York unless the application for registration is accompanied by proof of financial security which may be evidenced by, among other things, a certificate of insurance which is filed with the Department of Motor Vehicles. Section 311 of the Vehicle and Traffic Law defines a certificate of insurance as "any evidence issued by or on behalf of an insurance company duly authorized to transact business in this state, stating in such form as the commissioner may prescribe or approve that such company has issued an owner's policy of liability insurance on the motor vehicle or vehicles designated therein."

We believe that the Insurance Identification Card, formerly an FS–1, now generally an FS–20, is treated as the certificate of insurance for purposes of these statutes. *See Tomala v. Peerless Ins. Co.*, 20 A.D.2d .206, 208, 245 N.Y.S.2d 944 (4th Dep't), *aff'd mem.*, 14 N.Y.2d 862, 251 N.Y.S.2d 971, 200 N.E.2d 635 (1964); N.Y.Admin.Code tit. 15, § 32.2(a) (amended 1982). The Certificate of Insurance which Centennial furnished Hertz in no way resembled such an official FS document. *See* N.Y.Admin. Code tit. 15, § 32.9. In the first place, the Certificate at issue bore no FS number, and stated in bold letters immediately below the caption:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES LISTED BELOW.

The Certificate then provides:

> This is to certify that policies of insurance listed below have been issued to the insured named above and are in force at this time. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies.

■ In the absence of proof that the Certificate at issue was filed as an official section 311 certificate, *see Mack v. Great Atlantic & Pacific Tea Co.*, 25 A.D.2d 482, 266 N.Y.S.2d 770 (1966), we are not prepared to accept it as such. We conclude instead that it was simply notice to Hertz that a policy of insurance had been issued.

The policy and the Certificate being before us, we are in as good position as the district court to construe those documents. *See Dopp v. Franklin National Bank*, 461 F.2d 873, 879 (2d Cir.1972). Looking only to the language of the Certificate, we do not believe that the provision which makes Hertz an "additional insured for all vehicles leased by them to [the Post] including replacement and substitute vehicles per leasing contract" incorporates the lease agreement into the policy. Centennial's policy was intended to cover automobiles leased to the Post under the leasing contract. We believe the phrase "per leasing contract" was intended to identify the covered vehicles, not to describe the terms of the insurance coverage. When the Certificate is viewed in the light of the controlling legal principles and the terms of the policy itself, the conclusion is inescapable that the Certificate did not make the lease agreement part of the policy.

■ As a general rule, where a certificate or endorsement states expressly that it is subject to the terms and conditions of the policy, the language of the policy controls. *Birnbaum v. Jamestown Mutual Ins. Co.*, 298 N.Y. 305, 310–11, 83 N.E.2d 128 (1948); *Thompson-Starrett Co. v. American Mutual Liability Ins. Co.*, 276 N.Y. 266, 271, 11 N.E.2d 905 (1937); *Blue Cross of Northeastern New York, Inc. v. Ayotte*, 35 A.D.2d 258, 260, 315 N.Y.S.2d 998 (3rd Dep't 1970). This rule accords with the widely recognized principle that the intent to incorporate additional papers into an insurance policy must be plainly

manifest. *See* 29 N.Y.Jur. *Insurance* § 641, at 633 (1963); 1 *Couch on Insurance* 2d § 3:24, at 336 (rev. ed. 1984); *Buntin v. Continental Ins. Co.*, 583 F.2d 1201, 1205 (3d Cir.1978); *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232, 235 (3d Cir.1976); *Carolina Casualty Ins. Co. v. Transport Indemnity Co.*, 488 F.2d 790, 794 (10th Cir.1973). Section 345(i)(2) of the Vehicle and Traffic Law provides specifically that "[t]he policy, the written application therefor (if any) and any rider or endorsement, which shall not conflict with the provisions of this article, shall constitute the entire contract between the parties." In view of the above-quoted reservations in the Certificate, the "Hired Autos" clause in the policy, and the express exclusion in the policy of "[l]iability assumed under any contract or agreement," we think it clear beyond peradventure that the lease agreement was not incorporated into the policy by the terms of the Certificate of Insurance.

■ Of course, if the decision of the district court were correct, we would be duty bound to affirm it, even though the court "relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). In apparent reliance on this rule, Hertz suggests that, if we do not read coverage into the policy because the Certificate of Insurance put it there, we do so because coverage is mandated by statute. *See Bersani v. General Accident, Fire & Life Assurance Corp.*, 36 N.Y.2d 457, 460, 369 N.Y.S.2d 108, 330 N.E.2d 68 (1975); N.Y.Ins.Law § 143. However, the statutory provisions upon which Hertz relies do not support its contentions.

The "standard provisions" of a New York liability insurance policy are set forth in section 167 of the Insurance Law. Subsection (2) of section 167, which is patterned after section 388 of the Vehicle and Traffic Law, mandates that Centennial's policy contain a provision insuring the "named insured" against liability for injury resulting from negligence in the operation or use of one of its automobiles by any person using it with the permission, ex-

press or implied, of the "named insured". This subsection, like section 388, deals with derivative liability, with which we are not here concerned because of the worker's compensation defense available to the primary wrongdoers, the Post and its employee-driver. *Rauch v. Jones, supra*, 4 N.Y.2d at 595, 176 N.Y.S.2d 628, 152 N.E.2d 63. Moreover, Hertz is not a "named insured" under the policy, and the proper view is that Centennial "has undertaken *separate and distinct* obligations to the various assureds, named and additional." *Greaves v. Public Service Mutual Ins. Co.*, 5 N.Y.2d 120, 124, 181 N.Y.S.2d 489, 155 N.E.2d 390 (1959) (quoting *Morgan v. Greater N.Y. Taxpayers Mutual Ins. Ass'n*, 305 N.Y. 243, 249, 112 N.E.2d 273 (1953)).

The same holds true with regard to Vehicle and Traffic Law § 345. That section requires motor vehicle policies to insure the "named insured" or a person using the vehicle with his consent for a maximum of $10,000 for bodily injury to one person. It does not mandate the coverage which the district court has found to exist herein.

For all the foregoing reasons, the judgment of the district court is reversed, and the matter is remanded to the district court with instructions to see that the $109,000 paid by Centennial is repaid to Centennial with appropriate interest.