MOUNTAIN FUEL SUPPLY, a Utah
corporation, and CNA Insurance
Company, Plaintiffs–Appellees,

v.

RELIANCE INSURANCE COMPANY,
Defendant–Appellant.

No. 87–1564.

United States Court of Appeals,
Tenth Circuit.

May 17, 1991.

Terry M. Plant (Scott W. Christensen of Hanson, Dunn, Epperson & Smith, Salt Lake City, Utah, with him on the brief), for plaintiffs-appellees.

Raymond M. Berry (John R. Lund of Snow, Christensen & Martineau, Salt Lake City, Utah, with him on the brief), for defendant-appellant.

Before HOLLOWAY, Chief Judge, and McKAY and EBEL, Circuit Judges.

HOLLOWAY, Chief Judge.

Defendant-appellant, Reliance Insurance Company (Reliance), appeals from a judgment for $392,525 in favor of plaintiffs-appellees, Mountain Fuel Supply Company (Mountain Fuel) and CNA Insurance Company (CNA). The judgment resulted from a suit filed by Mountain Fuel and one of its insurers, CNA [1], against Reliance, an insurer of Darenco, Inc. (Darenco), and Freberg & Freberg (Freberg), Darenco's insurance agent. Darenco is a general contractor that was employed by Mountain Fuel to build a gas sweetening plant at Butcherknife Springs, Wyoming. Mountain Fuel sued to obtain reimbursement for all settlement and defense costs incurred in a prior personal injury suit filed by Albert McDonald against Mountain Fuel regarding an accident which occurred at Butcherknife Springs. Mountain Fuel claims that although Darenco's comprehensive liability policy issued by Reliance does not specifically mention Mountain Fuel, the return and approval of Mountain Fuel certificates of insurance, by Reliance's agent Freberg, gave Mountain Fuel named insured status and protection from liability at Butcherknife Springs.

## I

Many companies, including Mountain Fuel, require any hired company to present a certificate of insurance as evidence that the hired company has insurance. The certificate often used, called an ACORD certificate, lists a number of basic policy details and states that it "is issued as a matter of information only and confers no rights upon the certificate holder" and that it "does not amend, extend or alter the coverage afforded by the policies listed below." [2] See Brief of Appellant, Attachment F. Although the ACORD certificate is used for many insurance certificates, it is not the exclusive format used.[3]

Mountain Fuel had its own insurance certification form, which included a number of provisions not found in the ACORD certificate, two of which are critical in the instant case. The first is paragraph (f) stating that

> The language in the notice of cancellation clause appears to be phrased so as to avoid creating any firm obligation to give notice. It states that the insuring company "will endeavor" to mail notice to the certificate holder, "but failure to mail such notice shall impose no obligation or liability of any kind upon the company." See Brief of Appellant, Attachment F.

---

1. Although CNA was not involved initially in this action, it was later joined as a plaintiff and as a real party in interest. Since CNA and Mountain Fuel filed joint briefs in this matter and their interests are coincident, any Mountain Fuel activities in the litigation should be assumed to have been done in conjunction with CNA unless otherwise indicated.

2. Some of the details described by an ACORD certificate are the issuing agent; the insuring company or companies; the insured company; a description of the insured company's operations; the certificate holder; the types of insurance (i.e., general liability or automobile); the policy expiration dates; the policy limits; and the number of days' notice that the certificate holder is entitled to be given prior to policy cancellation.

3. Numerous companies, especially in certain industries, have a need for a more individualized certification of insurance indicating that coverage of a particular type is in place. These companies typically have their own insurance certification form which must be completed by the hired company's insurance agent or insurance company.

Mountain Fuel Supply Company is a named insured under each of the policies listed above, and each of the policies above is primary coverage to Mountain Fuel Supply Company. This primary coverage applies to the full policy limits prior to any other insurance coverage which Mountain Fuel Supply Company may have in the event of a claim under any of said policies.

The second is a clause stating that

[t]his certificate of insurance does not amend, extend or otherwise alter the terms and conditions of the insurance coverage in the policies identified above, except as above set forth.

I R. Doc. 51, Ex. B.

## II

On December 15, 1977, Mountain Fuel entered into a contract with Darenco for the construction of Butcherknife. The contract contained a "hold harmless" agreement specifying that Darenco would obtain liability insurance to cover both Darenco's and Mountain Fuel's liability regarding Darenco's work at Butcherknife.[4] Such indemnification was to be demonstrated by submission of a completed Mountain Fuel insurance certificate. *See* I R. Doc. 51, Ex. E at 9–10.

On June 10, 1977, Freberg, an insurance agency used by Darenco, returned to Mountain Fuel a Mountain Fuel certificate, filled out and signed by Freberg. The certificate identified Highlands Insurance Company as Darenco's insurer until June 9, 1978. I R. Doc. 51. Freberg signed the certificate as "agent" of Highlands. *Id.*

The following year, at the expiration of the Highlands policy, Reliance began to insure Darenco with a policy which was to run from June 9, 1978, until June 9, 1979. There is no record that any certificate of

insurance, either an ACORD or a Mountain Fuel form, had been issued to Mountain Fuel regarding the 1978–1979 Reliance policy. *See Mountain Fuel Supply and CNA Ins. Co. v. Freberg & Co. and Reliance Ins. Co.*, No. C–84–2175W at 4, II R. Doc. 83 (D.Utah Oct. 23, 1986) (unpublished memorandum decision and order granting partial summary judgment to Mountain Fuel) (hereinafter "II R. Doc. 83, Mem. Dec. 10/23/86").

The Reliance policy (stated on the certificate to be issued by Reliance and Harbor Insurance Companies) was renewed on June 9, 1979, for a one year period. *Id.* On June 11, 1979, a signed Mountain Fuel certificate regarding this policy was returned to Mountain Fuel by Freberg. *Id;* I R. Doc. 51, Ex. B. The certificate indicated that Mountain Fuel was to receive fifteen days' notice prior to cancellation of the policy. I R. Doc. 51, Ex. B. Mountain Fuel returned this certificate and requested the completion of a new one with a sixty day notice period. On July 24, 1979, Freberg returned the new Mountain Fuel certificate, identical to the one of June 11, except it indicated a 60 day notice period and it was not signed by Freberg. *See* Brief of Appellees, Attachment F. Both the June 11 and July 24 certificates indicated that the Reliance/Harbor insurance policy involved was "Expiring" on June 9, 1980. Despite Freberg's issuance of these certificates, containing paragraph (f), *see* Part I, *supra,* no endorsement was made to the Reliance/Harbor policy to include Mountain Fuel as a named insured.

On June 9, 1980, Reliance issued a renewal policy, due to expire on June 9, 1981, to Darenco. As in the previous Reliance/Harbor policies issued to Darenco, no mention was made of Mountain Fuel. At this time, Freberg issued an ACORD

---

4. The hold harmless agreement provided that Darenco agreed to

indemnify and hold Company [Mountain Fuel] harmless of and from any and all losses, claims, demands, damages, costs, loss of services, expenses, actions and causes of action of every kind or character whatsoever (including attorney's fees and court costs), whether subrogated or otherwise, which may arise or

may be claimed to have arisen out of, or in connection with the performance of work hereunder, caused solely by the Contractor, or arising out of violation of any applicable laws, ordinances, rules and regulations and provisions of right of way documents bearing on conduct of the work.

I R. Doc. 51, Ex. E at 9.

certificate to Mountain Fuel. This is the first ACORD certificate received by Mountain Fuel regarding Darenco.

Although the ACORD certificate did not meet Mountain Fuel's certification requirements, they did not notify Darenco of this problem until some months later. On January 9, 1981, Mountain Fuel sent a letter to Darenco with three paragraphs checked to show why the submitted certificate was not acceptable. The checked paragraphs read:

> Information must be provided on Mountain Fuel Supply Company Certificate of Insurance Exhibit 'B' form. 1 Form(s) attached.

> Paragraph (F) must not be excluded from Certificate. It is our intent that your company's insurance is primary but only with respect to operations performed for or on behalf of Mountain Fuel Supply Company.

> The Certificate does not reflect at least a 30 day notice of cancellation requirement.

I R. Doc. 46, Ex. B. The letter was attached to a Mountain Fuel certificate.[5] Darenco forwarded the letter to Freberg, but Freberg did not notify Reliance about the letter until January 27, 1981, one day after the McDonald accident.[6] Reliance subsequently endorsed Mountain Fuel on the policy as an additional insured, effective January 27, 1981, the date of the request. I R. Doc. 46, Ex. E.

### III

The McDonald complaint alleged that Mountain Fuel had failed to maintain a safe place to work, but it did not allege any specific design defects. Consequently, Mountain Fuel did not investigate possible connection to the design or construction of the water tank, treating the case as a simple "slip and fall." In November 1983 Mountain Fuel deposed McDonald's recently retained liability expert, Dr. Rudi Limpert. Limpert indicated that McDonald would be claiming that the railing on the stairway was significantly lower than that required by the American Petroleum Institute (API) design standards. IX R. at 57–60.

Mountain Fuel then sought leave to join general contractor Darenco and the manufacturer of the water tank as additional parties. Leave was denied because of the impending trial date of January 23, 1984. Mountain Fuel attempted to tender the defense to Darenco's insurer by sending a letter to Highlands by way of Freberg, apparently not realizing that Reliance was the present insurer of Darenco. Freberg routed the letter to Reliance on January 16, 1984, one week before trial. This tender was rejected. On January 20, 1984, McDonald accepted Mountain Fuel's offer of settlement for $250,000. Reliance was notified of the settlement and soon thereafter, it denied coverage and refused to pay anything to Mountain Fuel.

Ruling on cross motions for summary judgment by Reliance and Mountain Fuel, the district court granted partial summary judgment for Mountain Fuel. The court's rulings included:

1. The 1979 Certificate, as a matter of law, makes Mountain Fuel a named insured under the Reliance insurance policies in effect from June of 1979 to June of 1980.

2. The Accord [sic] certificate, as a matter of law, fails to specifically inform Mountain Fuel of a change in its status as a named insured.

3. As a consequence, the insurance coverage in effect on January 26, 1981, when Albert McDonald was injured, is the same as the insurance coverage which was in effect from June of 1979 to June of 1980.

---

5. By this time, the Mountain Fuel certificate form had been modified, with the new version stating that Mountain Fuel was an "additional insured" on the policy, rather than a named insured.

6. On January 26, 1981, Mr. Albert McDonald fell off an icy stairway of a water tank at the Darenco constructed Butcherknife plant and sustained injuries which later rendered him paraplegic. In 1982, McDonald sued Mountain Fuel, the suit later resulting in a settlement payment of $250,-000.00. This settlement is the basis for the instant suit.

II R. Doc. 83 at 12, Mem. Dec. 10/23/86. Reliance moved to vacate the partial summary judgment, which motion was denied the following day.[7]

Shortly before the jury trial, the court ruled that the policy conditions, particularly requiring notification to Reliance, could release Reliance from its duty to defend and to reimburse Mountain Fuel only if Reliance proved it had actually been prejudiced by the breach of the conditions. *See* Court's Letter to Counsel, Brief of Appellant, Attachment B. At the outset of the trial, the court ruled that Reliance could prove actual prejudice only by showing that if it had handled the McDonald case from the beginning, it would have achieved a better result than CNA did. IX R. at 5. Reliance asserted affirmative defenses based on Mountain Fuel's breach of the policy conditions, primarily the duty to notify Reliance of a lawsuit. The issues were submitted to the jury on a special verdict. The jury returned a verdict for Mountain Fuel, finding that Mountain Fuel had breached the policy conditions but that no actual prejudice resulted from the breach.

A judgment for $392,525 was entered for Mountain Fuel, including all settlement and defense costs incurred in the McDonald lawsuit. Reliance moved for judgment notwithstanding the verdict, arguing that Mountain Fuel was not its insured at the time of the accident, and that Mountain Fuel's failure to satisfy the conditions precedent precluded recovery, regardless of whether Reliance could have obtained a better result than CNA. II R. Doc. 114. Reliance also moved for a new trial on several grounds, including that the summary judgment on coverage improperly re-

moved the factual issues of intent and notice from the jury. II R. Doc. 115. Both motions were denied. This appeal followed.

## IV

Although the district judge relied heavily on *Aetna Insurance Co. v. Lythgoe*, 618 P.2d 1057 (Wyo.1980), he made no express determination as to whether Wyoming or Utah law controls this case. II R. Doc. 83 at 9–11, Mem. Dec. 10/23/86. Mountain Fuel has consistently argued, before the district court and before us, that Wyoming law is applicable. I R. Doc. 51 at 12; I R. Doc 70 at 4–7; Brief of Appellee at 16–18. Reliance in the district court stated only that it is "probably correct" that Wyoming law governs. II R. Doc 75 at 4–5. Before this court Reliance took no position regarding choice of law until its reply brief, which argues for the application of Utah law. Reply Brief of Appellant at 18–23.

We are not obligated to address an argument which was not made in the district court, nor even in this court until the reply brief. *See Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508 n. 2 (10th Cir.1991); *Farmers Ins. Co. v. Hubbard*, 869 F.2d 565, 570 (10th Cir.1989). This argument is, however, responsive to Mountain Fuel's brief and therefore we exercise our discretion to reach the merits of the conflict question. *See Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

We look to the conflict of laws rules of Utah, the forum state, to determine which state's laws will be controlling. *Klaxon v. Stentor Electric Manufactur-*

---

7. It is quite important that the district court found Mountain Fuel to be a named insured rather than an additional insured under the Reliance policy.

The coverage given to a named insured under a Reliance policy is materially different from that given to an additional insured. XI R. at 510. First, a named insured is covered for its own negligence regarding the subject matter of the contract, while an additional insured is only covered for liability arising out of the work of a named insured while that insured is working for the additional insured. *Id.* at 510–11; Addendum to Brief of Appellant, Ex. 4. Another

important coverage distinction is that an additional insured endorsement contains a completed operations clause under which coverage for the additional insured ends once the named insured completes work on the covered item and it is used for its intended purpose. XI R. at 510; Addendum to Brief of Appellant, Ex. 4.

Thus, if Mountain Fuel had been only an additional insured, to recover from Reliance it would probably have to show that the water tank was not yet being used for its intended purpose; that it was not completed. The record is to the contrary.

*ing Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Rhody v. State Farm Mutual Ins. Co.*, 771 F.2d 1416 (10th Cir. 1985). For many years, Utah followed the rule of *lex loci contractus*, meaning applying the law of the place where the contract was made, as set forth in the first Restatement of Conflict of Laws. *See Crofoot v. Thatcher*, 19 Utah 212, 57 P. 171, 173 (1899); *Loveridge v. Dreagoux*, 678 F.2d 870, 877 (10th Cir.1982); *Trans–American Col's Inc. v. Continental Acc. Serv. House*, 342 F.Supp. 1303 (D.Utah 1972).

We note that Utah also followed the rule of *lex loci delictus* regarding torts. *See Velasquez v. Greyhound Lines, Inc.*, 12 Utah 2d 379, 366 P.2d 989, 991 (1961), overruled on other grounds, 671 P.2d 217, 222 (Utah 1983); *Bodrug v. United States*, 832 F.2d 136, 137 (10th Cir.1987); *Jackson v. Continental Bank & Trust Co.*, 443 F.2d 1344, 1349 (10th Cir.1971). Recently, however, Utah followed the "most significant relationship" torts analysis, as outlined in the Restatement (Second) of Conflict of Laws § 145. *Forsman v. Forsman*, 779 P.2d 218, 219–20 (Utah 1989).

While the Utah courts have not formally embraced the "most significant relationship" analysis of the Restatement (Second) of Conflict of Laws § 188 in contract cases, several persuasive federal district court opinions have held that such analysis would be adopted by Utah. *First Sec. Bank of Utah, N.A. v. Felger*, 658 F.Supp. 175, 180–81 (D.Utah 1987); *Wisconsin Mortg. Assur. Corp. v. HMC Mortg. Corp.*, 712 F.Supp. 878, 880 (D.Utah 1989); *see also Overthrust Constructors, Inc. v. Home*

*Ins. Co.*, 676 F.Supp. 1086, 1088 (D.Utah 1987). We agree and, in this contractual dispute, conclude that we should apply the "most significant relationship" test as the one which Utah would follow here.

■ Under this test, the court is to determine the state which has the most significant relationship to the transaction and the parties.[8] The Wyoming contacts are: the subject matter of the insurance contracts, the Butcherknife plant, is in Wyoming; Freberg, the agent of Reliance, is a Wyoming corporation; the underlying liability insurance contracts were entered into in Wyoming, between Darenco and Freberg; the construction contract between Mountain Fuel and Darenco was made in Wyoming. The Utah contacts are: the McDonald suit was filed in the Utah state court; the instant suit was filed in the Utah federal court; Mountain Fuel is a Utah corporation; the certificates of insurance were sent to Mountain Fuel in Utah. Darenco, the construction company, is a Texas corporation with an office in Wyoming, and Reliance is a Pennsylvania corporation. Although Mountain Fuel is a Utah corporation and there are a number of Utah contacts in the case, we feel that the Wyoming contacts predominate by demonstrating collectively a stronger interest.

Weighing the factors of this case, we are persuaded that the Utah courts would decide that Wyoming law controls.

## V

Reliance argues that the district court erred both factually and legally in finding,

---

**8.** Several of the factors listed in § 188 of the Restatement are present in the contacts listed above. Section 188 reads, in part:

§ 188 Law Governing in Absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, ...

Restatement (Second) of Conflict of Laws § 188.

in its summary judgment ruling, that Mountain Fuel was a named insured of Reliance at the time of the McDonald accident.

■ In reviewing a grant of summary judgment, we examine the case in the same manner as the district court to determine if any genuine issue of material fact exists and, if not, whether the substantive law was correctly applied. The evidence is to be examined in the light most favorable to the nonmovant with all reasonable inferences drawn in its favor. *Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 653 (10th Cir.1986); *Windon Third Oil and Gas Drilling Partnership v. Fed. Deposit Ins. Corp.*, 805 F.2d 342, 345–46 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). We review the district court's determinations on state law *de novo*. *Salve Regina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

■ Absent a plain manifestation of intent to incorporate a certificate or endorsement into an insurance policy, the policy will remain in force as originally written. *Taylor v. Kinsella*, 742 F.2d 709, 711–12 (2nd Cir.1984). The majority view is that where a certificate of insurance, such as the ACORD certificate, expressly indicates it is not to alter the coverage of the underlying policy, the requisite intent is not shown and the certificate will not effect a change in the policy. *Id. See* Brief of Appellant, Attachment F. Here, however, we are dealing with an unusual certificate of insurance which goes beyond the mere absence of a disclaimer or deferral to the policy. The Mountain Fuel certificate states that it "does not amend, extend or otherwise alter the terms and conditions of the insurance coverage in the policies identified above, *except as above set forth.*" (emphasis added). I R. Doc. 51, Ex. B. The use of such language indicates Mountain Fuel's intent to incorporate the terms and conditions of the certificate into the underlying insurance contract. Moreover,

the approval of the certificate by Freberg, as agent of Reliance, indicates an acceptance of the terms as stated. We agree, therefore, with the district court's ruling and Mountain Fuel's contention that the return of the completed Mountain Fuel certificates of insurance gave Mountain Fuel status as a named insured on the Reliance/Harbor policy.

■ Although the second Mountain Fuel certificate, with the notice provision corrected to sixty days, was returned unsigned, it was clearly intended to function as an otherwise exact replacement for the previously issued certificate, signed by Freberg. One can become bound by a contract without signing it if the intent to accept the contract has been demonstrated through other means, as was the case here. 17A Am.Jur.2d *Contracts* § 185 (1991); *Ercanbrack v. Crandall–Walker Motor Co.*, 550 P.2d 723 (Utah 1976) (dicta). *See Pangarova v. Nichols*, 419 P.2d 688, 697 (Wyo. 1966). We hold, therefore, that Mountain Fuel became a named insured under the Reliance/Harbor policy on July 11, 1979.

## VI

The question remains as to whether Mountain Fuel was still a named insured of Reliance at the time of the McDonald accident on January 26, 1981. The July 11, 1979 and the July 24, 1979 Mountain Fuel certificates of insurance stated that the Reliance/Harbor policy expired on June 9, 1980. When Darenco renewed its policy to provide for coverage from June 9, 1980 to June 9, 1981, the underlying policy, as before, made no mention of Mountain Fuel. This time, no Mountain Fuel certificate of insurance was returned to Mountain Fuel regarding this policy until after the McDonald accident.[9] Instead, an ACORD certificate with no provision for Mountain Fuel coverage like paragraph F in the earlier certificates, was sent to Mountain Fuel. And Mountain Fuel did not request a re-

---

9. The effective date of this certificate was the day of issuance, one day after the McDonald accident. XI R. 535, 555.

placement Mountain Fuel certificate for approximately six months.

It is argued by Mountain Fuel, however, that since it was a named insured under the Reliance/Harbor policy ending June 9, 1980, its coverage could not be reduced in the renewal policy ending June 9, 1981, without Reliance first providing Mountain Fuel with specific notification of the reduction in coverage. Mountain Fuel relies on *Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1060 (Wyo.1980), holding that the obligation "is with the insurer to specifically inform the insured of the changes in the terms of the policy which is a renewal policy." The *Lythgoe* opinion also states that "unless the insurer calls to the attention of the insured changes in the coverage or conditions of the policy the insured has a right to presume that they are the same as those in the policy renewed even in light of the failure of the insured to examine the policy." *Id.* at 1060; *see* Brief of Appellee at 13.

▉▉▉ The majority view, as thus adopted by Wyoming, is that the insurer is under a duty to call to the insured's attention any changes in the coverage or conditions of a renewed policy. *Lythgoe*, 618 P.2d at 1060; 91 A.L.R.2d 546 (1963); *Government Employees Ins. Co. v. United States*, 400 F.2d 172, 175 (10th Cir.1968); *Noyes Supervision, Inc. v. Canadian Indemn. Co.*, 487 F.Supp. 433, 435–36 (D.Colo.1980). This rule however is predicated upon the fact that the insured is typically the one who renews the contract with the insurer and, absent a contrary intent, is deemed to have desired to retain the same coverage as previously held. *See* Wyo.Stat. § 26–35–204 (1986) (requiring an insurer to furnish insured with altered renewal terms along with a statement of the amount of premium due); 91 A.L.R.2d 546, 549 (1963) (rule arises because of insured's reliance on assumption he is receiving policy containing same terms and conditions as before).

▉▉▉ Here, however, the circumstances were such that Mountain Fuel had no basis for assuming that the coverage would continue unchanged after June 9, 1980, with respect to Mountain Fuel. Instead Mountain Fuel had notice, from the certificates of insurance returned to it in 1979, that the Reliance/Harbor policy was "Expiring 6/9/80." Despite notice of that expiration date, Mountain Fuel took no affirmative action to have a new certificate or policy provision make Mountain Fuel a "named insured" by that date, and instead waited some six months to do so. For reasons that follow, we hold that Reliance was under no obligation to notify Mountain Fuel further of the expiration on June 9, 1980, of Mountain Fuel's status as a named insured. The June 11, 1979, certificate, making Mountain Fuel a named insured through paragraph f, had plainly stated that the basic coverage was "Expiring June 9, 1980." [10]

Absent a policy or statutory provision to the contrary, an insurer is under no duty to give notice of a policy's expiration date. *First National Bank in Sioux City v. Watts*, 462 N.W.2d 922, 927 (Iowa 1990); *Waynesville Security Bank v. Stuyvesant Ins. Co.*, 499 S.W.2d 218, 222 (Mo.Ct.App. 1973). It has been noted that "the majority, though not necessarily the better view, is that the insurer need give no notice of the termination of policy coverage." 12A Appleman, Insurance Law and Practice § 7175, at 19. And it "has been held that where a liability policy is one for a 'specific term of duration' and not one for an indefinite period and, thus, under regulations automatically expired at the end of its term, the insurer was under no duty to give statutory notice as required when a policy is forfeited or suspended or cancelled for nonpayment of premium." 43 Am.Jur.2d Insurance § 237, at 320; Couch on Insurance 2d § 67:28, at 482.[11]

---

**10.** We note that the Mountain Fuel certificate of insurance made no provision for, nor mention of, renewal of coverage. *See* I R. Doc. 51, Ex. B.

**11.** Although the Mountain Fuel certificate provided for notice to be given to Mountain Fuel

upon *cancellation* of the Darenco insurance policy, no similar provision was included for *expiration* of the policy. Cancellation and expiration are distinct terms, with cancellation meaning termination of a policy prior to its contemplated expiration date by an act of one or more

We feel that this rule applies here and would be followed by the Wyoming court. The argument that Darenco's renewal of its Reliance policy, with no provision for Mountain Fuel, somehow creates coverage for Mountain Fuel, absent notice to it, would lead to a result which is neither required nor supported by case law or policy considerations. Where a policy's coverage is renewed, the duty to notify the insured of "changes in the coverage or conditions of the policy," *Aetna Insurance Co. v. Lythgoe,* 618 P.2d at 1060, is a different matter. We hold, therefore, that the coverage of Mountain Fuel as a named insured under the Reliance/Harbor policy expired on June 9, 1980, in accordance with the 1979 certificates of insurance furnished to Mountain Fuel. And Mountain Fuel had no basis for recovery as an additional insured due to the completed operations exclusion. *See* note 7, *supra.*

The parties raise a number of other issues, all premised upon the district court's holding that Mountain Fuel was covered by Reliance as a named insured at the time of the McDonald accident. Since we disagree with that ruling, there is no need to address these remaining issues.

In sum, the denial of the motion of Reliance for judgment notwithstanding the verdict was error. The judgment is reversed and the cause is remanded for entry of judgment for Reliance.

IT IS SO ORDERED.

---

of the parties. Expiration is the natural termination of the policy at the lapse of the coverage period set forth in the policy's own terms. Provisions relating to cancellation of insurance have no relation to termination of the policy by expiration. *State Farm Mut. Ins. Co. v. White,* 563 F.2d 971, 974 n. 2 (9th Cir.1977); *First Nat'l Bank in Sioux City v. Watts,* 462 N.W.2d 922, 926–27 (Iowa 1990); Couch on Insurance 2d (Rev. ed.) § 67:28. *See also Wiltgen v. Hartford Accident and Indemn. Co.,* 634 F.2d 398, 400 (8th Cir.1980) (distinguishing between expira-tion and cancellation); *Coleman v. Holecek,* 542 F.2d 532, 534 (10th Cir.1976) (distinguishing between expiration at a future date and immediate cancellation).

Subsequent to this case, Wyoming enacted two statutes providing for notification when an insurance policy is cancelled, Wyo.Stat. § 26–35–202 (1986), and when an insurance policy is nonrenewed upon expiration, Wyo.Stat. § 26–35–203 (1986). Neither statute specifies who is entitled to notice.