AMERICAN NATIONAL FIRE INSUR-ANCE CO. and Dan Marsters, Plaintiffs and Appellee,

v.

FARMERS INSURANCE EXCHANGE, Defendant and Appellant.

No. 950076.

Supreme Court of Utah.

Nov. 19, 1996.

N. Brett Jones, Salt Lake City, for National.

G. Steven Sullivan, Salt Lake City, for Marsters.

John M. Chipman, J. Benjamin Tyler, Salt Lake City, for Farmers.

HOWE, Justice:

Farmers Insurance Exchange (Farmers) appeals from the trial court's declaratory judgment in favor of American National Fire Insurance Company (National), ruling that Utah law applies to invalidate a step-down provision limiting insurance coverage in an Idaho automobile liability insurance policy.

## FACTS

Early in 1994, an automobile driven by National's insured Robert Root and owned by Farmers' insured Bernice Larson, both Idaho residents, was involved in an accident with a motorcycle on Interstate 80 in Utah just east of the Nevada border. The motorcycle rider, Colorado resident Dan Marsters, was injured. He has settled his claims against Root and is not a party to this appeal. Larson, who was a passenger in her automobile at the time of the accident, owned a $500,000 automobile liability insurance policy issued in Idaho by Farmers. Root owned a $250,000 personal liability policy issued by National which would cover any deficit up to that amount in the coverage provided by Larson's policy. Larson's Farmers policy contained a step-down provision limiting liability coverage for guest drivers to the amount required by the Idaho Financial Responsibility Law, which is $25,000. The dollar amount does not appear in the policy itself but is contained in the Idaho Code.

The Utah law in effect at the time of the accident provided, "No insurance policy may contain any agreement or incorporate any provision not fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery." Utah Code Ann. § 31A–21–106 (1994).[1] Idaho law, however, contains no

---

1. This section has since been amended. The current statute provides:

[A]n insurance policy may not contain any agreement or incorporate any provision not

parallel provision. National brought this action for a declaratory judgment that the Idaho step-down provision is unenforceable in Utah. Both parties moved for summary judgment on the issue. The trial court granted National's motion, concluding that the step-down provision is unenforceable in Utah, that there is no conflict between Utah and Idaho law, and that since the accident occurred in Utah, Utah law should apply, giving the permissive driver the same coverage as the owner. Farmers appeals.

## STANDARD OF REVIEW

■ A grant of summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290 (Utah 1996). Since the facts are undisputed here, we examine only issues of law. We review the trial court's conclusions of law for correctness, granting them no deference. *Harline v. Barker*, 912 P.2d 433 (Utah 1996).

## ANALYSIS

### A. Conflict

■ National seeks to avoid full performance of its Idaho personal liability contract with Root by applying Utah law. It first contends that there is no conflict between Utah and Idaho law and hence no choice of law question is involved and that thus the law of Utah, the forum state, should apply. However, according to Restatement (Second) Conflict of Laws, "a choice-of-law problem arises whenever a contract has a substantial relationship to two or more states with different local law rules on the subject." § 205 cmt. a (1971) [hereinafter Restatement of Conflict].

Since Utah Code Ann. § 31A–21–106 prohibits the inclusion of any provision in an insurance policy that does not appear on the face of the policy itself or an accompanying document, Farmers' liability for a permissive

driver becomes potentially $475,000 greater under Utah law than the $25,000 for which it bargained under Idaho law. National, which has an obligation to cover the difference between the amount of Farmers' liability and the damages, benefits by the elimination or reduction of its liability. This is by definition a conflict. Indeed, were it not for the "different rules of local law" on the subject of insurance policy coverage, there would be no issue before us.

### B. Choice of Law

#### 1. Arguments in the Instant Case

■ Having established that a conflict exists, we must determine what law applies. Under Restatement of Conflict, § 205 cmt. b, "questions involving the extent of contractual obligations are determined by the law chosen by the parties if they have made an effective choice .... Otherwise, these questions are determined by the law selected by application of the rule of § 188." Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by *the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties* under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties ..., the contacts to be taken into account in ... [determining] the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

(Emphasis added.) The insurance contract between Larson and Farmers clearly has a significant relationship with Idaho, having

---

fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery, unless the policy, application, or agreement accurately reflects the terms of the incorporated agreement, provision, or attached document.
Utah Code Ann. § 31A–21–106 (1996).

been negotiated and executed there and involving an Idaho resident and an automobile which is registered and garaged in that state. National argues that the contract also has a substantial relationship to Utah since the accident occurred here and therefore Utah law should apply. National relies on *Watson v. Employers Liability Assurance Corp.,* 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954), for the proposition that in a tort action involving an insurance contract, the law of the forum state should be applied. In *Watson,* the Court applied Louisiana law to a Massachusetts insurance contract involving product liability, reasoning that persons injured or killed in Louisiana are likely to be Louisiana residents and Louisiana may have to care for them or that treatment may involve Louisiana doctors and hospitals or Louisiana welfare resources. *Watson,* 348 U.S. at 72, 75 S.Ct. at 169–70. However, *Watson* involved the right to bring a direct action against an insurer—strictly a procedural issue—rather than the substantive content of the contract or the rights of the parties to damages. In the instant case, by contrast, National asks us to alter the terms of the contract between Farmers and Larson and thus impose greater liability upon Farmers than the parties to that contract bargained for. Therefore, *Watson* is inapposite to the case before us.

National also cites *Clay v. Sun Insurance Office Ltd.,* 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964), in support of applying the law of the state where the injury occurred rather than the state where the contract was made. In *Clay,* however, the plaintiff was living in the foreign state, not merely traveling through, and the issue involved a statute of limitations. The statute of limitations, again, is a procedural issue which deals, not with the substance of the bargain, but simply with time restraints on its enforcement. The court in *Clay* was not required to recast the terms of the contract in order to apply the law of the forum state.

## 2. Other Jurisdictions

The Idaho court in *Unigard Insurance Group v. Royal Globe Insurance Co.,* 100 Idaho 123, 594 P.2d 633 (1979), adopted the Restatement position in applying Idaho law to an accident that occurred in Oregon. The court stated, "What is involved here is not an action in tort to establish liability, but rather a declaratory judgment action involving interpretation of written contracts of insurance ...." *Id.* 594 P.2d at 636. Relying on the factors of Restatement of Conflict section 6, referred to in section 188, especially (2)(d)— "the protection of justified expectations"— and (2)(f)—"certainty, predictability and uniformity of result,"—the court stated:

> Regarding the accident which occurred in Oregon, the needs of the interstate system require that persons who travel from their residence into another state have protection of the laws equal to that afforded to persons who have not crossed state lines.... In negotiating and executing the respective insurance contracts, both appellant and respondent justifiably expected that the laws of Idaho would apply. The combined weight of all these circumstances leads us to the conclusion that Idaho has the most significant relationship with the transaction and parties here involved. We therefore hold that the district court was correct in applying Idaho law to this action.

*Id.* at 636–37.

Other jurisdictions have also rejected the site of the accident as the determining factor in choice of law questions. Both the Kansas Supreme Court and the Kansas Court of Appeals have found that the mere fact that an accident occurred in one state does not give that state the most significant relationship in an insurance contract dispute. *See Wilds v. Mid–Century Ins. Co.,* 231 Kan. 124, 642 P.2d 567, 569 (1982); *State Farm Mut. Auto. Ins. Co. v. Baker,* 14 Kan.App.2d 641, 797 P.2d 168, 171 (1990). In Washington state, the supreme court and the court of appeals have applied the law of the state where the policy was issued rather than the law of the state where the accident occurred. *See Van Vonno v. Hertz Corp.,* 120 Wash.2d 416, 841 P.2d 1244, 1246 (1992); *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 41 Wash.App. 26, 701 P.2d 806, 808 (1985). Courts in Colorado, Arizona, Nevada, and Oregon have all held that the location of the accident, standing alone, is not sufficient to outweigh the location of the vehicle, the place

of contracting, and the residency of the parties. *See Shon v. Subaru of America, Inc.,* 753 P.2d 793, 795–96 (Colo.Ct.App.1988); *Government Employees Ins. Co. v. Fenton,* 164 Ariz. 440, 793 P.2d 1107, 1108 (Ariz.Ct. App.1989); *Sotirakis v. United Serv. Auto. Ass'n,* 106 Nev. 123, 787 P.2d 788, 791 (1990); *Aetna Casualty & Sur. Co. v. Brathwaite,* 90 Or.App. 109, 751 P.2d 237, 241–42 (1988).

### 3. Utah Law

In *Forsman v. Forsman,* 779 P.2d 218 (Utah 1989), this court applied the Restatement of Conflict's most significant relationship test to determine the applicable law in a tort action. The Utah Court of Appeals relied on *Forsman* in *Records v. Briggs,* 887 P.2d 864, 867–68 (Utah.Ct.App.1994), stating, "We doubt that our supreme court intended to apply the new approach to tort cases alone, while retaining the old approach in all other cases."[2] In *Overthrust Constructors, Inc. v. Home Insurance Co.,* 676 F.Supp. 1086, 1088 (D.Utah 1987), the court relied heavily on section 193, Restatement of Conflict, in applying Utah law to an action which arose in Wyoming. Section 193 provides that the local law of the state that the parties understood to be the principal location of the insured risk applies to contracts of fire, surety, or casualty insurance. Furthermore, under comment b, "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged" and "the risk's principal location is the most important contact to be considered in the choice of applicable law, at least as to most issues." Consequently, even though the plaintiff was incorporated in Wyoming, where the injury occurred, and the insurance company's principal place of business was in New York, the court found that the litigation had little significant contact with Wyoming and New York. The court held that "the place of performance is in Utah because payment[s] under insurance policies are made at the principal location of the insured object or risk." *Overthrust,* 676 F.Supp. at 1088. Fi-

nally, the Utah Court of Appeals in *Shaw v. Layton Construction Co.,* 872 P.2d 1059 (Utah.Ct.App.1994), applied a hybrid test, combining significant interest with the expectations of the parties to determine the choice of law in a workers' compensation dispute.

■ In *Mountain Fuel Supply v. Reliance Insurance Co.,* 933 F.2d 882 (10th Cir.1991), the Tenth Circuit Court interpreted a comprehensive construction liability policy. The court observed that a federal court looks to the conflict of laws rules of the forum state for controlling law and that it consequently would "look to the conflict of laws rules of Utah, the forum state, to determine which state's law will be controlling." *Id.* at 887 (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Rhody v. State Farm Mutual Ins. Co.,* 771 F.2d 1416 (10th Cir.1985)). The court noted that for many years Utah followed the rule of *lex loci contractus,* applying the law of the place where the contract was made as provided in Restatement (First) of Conflict of Laws. *See Crofoot v. Thatcher,* 19 Utah 212, 57 P. 171 (1899). The court further observed, however, that this court applied the significant interest test in *Forsman,* a tort case, and that "several persuasive federal district court opinions have held that such analysis would be adopted by Utah [in contract cases]." *Mountain Fuel Supply,* 933 F.2d at 888 (citations omitted). The Tenth Circuit concluded that "we should apply the 'most significant relationship' test as the one which Utah would follow here." *Id.* We agree and hold that the most significant relationship test as explained in Restatement of Conflict section 188 is the appropriate rule for Utah courts to apply to a conflict of laws question in a contract dispute.

■ In the instant case, all significant contacts, save the place of the accident itself, are with Idaho. Under the most significant relationship test, the location of the accident is not sufficient to outweigh numerous other contacts, particularly when reliance upon the

---

**2.** This court has used what appeared to be the lex loci rule in a contracts case as recently as 1981, in *Morris v. Sykes,* 624 P.2d 681 (Utah 1981). However, because that case involved a contract for purchase of land in another jurisdic-

tion (Alaska), it is likely that the result would have been the same under the most significant interest test. Moreover, we actually applied Utah law because there was no showing that the laws of the two states were different.

law of the forum state would seriously alter the original bargain and disrupt the expectations of the parties. "[I]n contracts ... there is but one basic policy, namely protection of the expectations of the parties." Eugene Scoles & Peter Hay, *Conflict of Law* § 18.1, at 632 (1984) (citing Reese, *Choice of Law in Torts and Contracts and Directions for the Future,* 16 Colum. J. Transnat'l L. 1, 21 (1977)). To protect justified expectation and predictability of result as intended by Restatement of Conflict section 6, we must hold that the parties to an automobile insurance contract cannot change their bargain or have the bargain changed for them every time they drive across a state line. Therefore, Idaho law governs the construction of the Idaho insurance contract before us.

## C. Enforceability of Step–Down Provision

▮ National relies on our holding in *Cullum v. Farmers Insurance Exchange,* 857 P.2d 922, 923 (Utah 1993), for its argument that an insurance limitation incorporated by reference is unenforceable in Utah. In *Cullum,* we examined a Utah insurance contract which contained a step-down provision incorporating the limits of the Utah Financial Responsibility law by reference. We held that the provision violated Utah Code Ann. § 31A–21–106, which requires that all provisions of an insurance contract appear on the face of the policy or in an accompanying document. Since *Cullum* applied Utah law to a Utah contract and the instant case involves an Idaho contract under Idaho law, National's reliance on that analysis is misplaced. In addition, contrary to National's reading of the case, our holding did not prohibit properly drafted step-down coverage for permissive users.

We next examine whether the step-down provision in the Farmers policy is enforceable under Idaho law. As previously noted, Idaho has no statute which requires all insurance contract provisions to be set forth in the policy or accompanying documents. In fact, Idaho Code Ann. § 49–1212(5) (1994) provides that "every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein." There follows a list of four provisions which auto-

matically become part of every motor vehicle liability insurance policy irrespective of whether they are expressed in the policy itself. While this is not incorporation by reference per se, it does illustrate that the Idaho legislature has not required all provisions to be set forth in the policy itself. There is no indication in the Idaho Code, and National does not contend, that insurance companies in Idaho are not free to incorporate the requirements and coverage limits contained in the Idaho Financial Responsibility law into their policies by reference.

National asserts, however, that although no Idaho statute forbids incorporation by reference, it should be prohibited as a matter of public policy. However, in *Meckert v. Transamerica Insurance Co.,* 108 Idaho 597, 701 P.2d 217 (1985), the Idaho Supreme Court refused to invalidate an exclusion of coverage in an underinsured motorist coverage provision contained in an automobile insurance policy, pointing out that Idaho statutes do not regulate underinsured motorist coverage. The court wrote:

> Neither the Idaho legislature nor the courts have declared that there exists a public policy applicable to *underinsured* motorist coverage. While such a policy might be desirable that policy should be enunciated by our legislature and not by this court. Hence, we hold that there is no public policy basis upon which to rule that the language of the exclusion clause presented here is invalid.

*Id.* 701 P.2d at 220 (citations omitted). Later, in *Farmers Insurance Co. of Idaho v. Buffa,* 119 Idaho 345, 806 P.2d 438, 440 (1991), the court again refused to void an underinsured motorist provision, stating, "Underinsured coverage in this state is a matter of contract law, not public policy." These cases evince a refusal by the highest court in Idaho to interfere with the right of the parties to freely contract with regard to automobile insurance except in instances where the legislature has expressly curtailed that right. Consequently, we reject National's argument that the step-down provision in the instant case violates the public policy of Idaho.

## CONCLUSION

An automobile is by its very nature mobile and can be expected to cross state lines frequently. Reforming an automobile liability insurance policy every time the automobile crosses state lines would invalidate the expectations of the parties and destroy predictability both for the insurance company in adjusting its policies, fees, income, and expense projections and for the party purchasing liability insurance.

We therefore reverse the summary judgment and hold that Idaho law applies and consequently the step-down provision in the Farmer's policy is enforceable as written.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE'S opinion.